IN RE RESTITUTION IN STATE V. William OLSON:

William OLSON, Appellant,

v.

Sidney KAPRELIAN, Respondent.

Court of Appeals

*No. 95–2322. Submitted on briefs March 25, 1996.—Decided April 10, 1996.*

(Also reported in 550 N.W.2d 712.)

On behalf of the appellant, the cause was submitted on the briefs of *Terry W. Rose* of *Rose & Rose* of Kenosha.

On behalf of the respondent, the cause was submitted on the briefs of *Alice A. Nejedlo* of *Hanson, Gasiorkiewicz & Weber, S.C.* of Racine.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. This case primarily concerns how trial courts may enforce outstanding criminal restitution orders. William Olson, who was convicted of a criminal assault, claims that the trial court could not make him forfeit restitution directly from a bond he had posted in a separate criminal matter. We agree and thus reverse the trial court's order which directed the clerk to pay the victim, Sidney Kaprelian, directly from Olson's bond. However, we reject Olson's further argument that his civil settlement with Kaprelian encompassed the damages within the restitution award and therefore precludes Kaprelian from seeking enforcement of the restitution order in some other manner.

The controversy began with a fight between Olson and Kaprelian that started after a party in December 1991. As a result, Olson faced criminal assault and property damage charges in Kenosha county and Kaprelian faced a criminal damage to property claim in Racine county.

Olson pled no contest to his charges in June 1992. The Kenosha trial court imposed a fine and jail sentence and also ordered him to pay Kaprelian $937.64 in restitution.

The Racine trial court convicted Kaprelian on his charges in September 1993. The court ordered him to pay Olson $150 as restitution. The Racine trial court then credited Olson with this amount. Thus, after both parties had faced their respective criminal charges, Olson owed $787.64 to Kaprelian.

In January 1993, Kaprelian brought a civil action against Olson for damages arising out of the December 1991 assault. Olson responded with several counterclaims, including one for the damage that Kaprelian did to his property that same December.

The parties subsequently agreed to settle these civil claims and dismiss the case. The agreement provided:

> That the Complaint of [Kaprelian], and each of the causes of action contained therein, whether pleaded *or not,* may be dismissed upon the merits, with prejudice, without costs and without further notice.

In March 1994, Kaprelian incorporated the agreement into an order and it was approved by the Racine trial court.[1]

Over a year passed. Then in June 1995, Kaprelian filed an order to show cause with the Kenosha trial court seeking to enforce the original restitution award of $787.64 against Olson. That previous March, Olson had posted a $2500 cash bond with the Kenosha courts for criminal charges in an unrelated matter. Kaprelian thus asked the trial court to simply assign him the money directly out of Olson's bond.

---

[1] The Honorable Gerald P. Ptacek, presiding.

After a hearing, the trial court issued the following order:

> IT IS HEREBY ORDERED THAT, at the conclusion of Kenosha County Case Number 95-CF-154, the Clerk of Courts for Kenosha County shall pay directly to Sidney Kaprelian the sum of $787.64 from any funds remaining from the bond posted by William Olson in that matter. The purpose of this order is to enforce compliance by William Olson with the terms of the judgment in the above captioned matter as regards restitution ordered by this Court.

The court rejected Olson's argument that the civil settlement from March 1994 precluded Kaprelian from trying to enforce this outstanding restitution order.

On appeal, Olson reargues his defense. But before addressing it, we must first examine the validity of the actual order requiring Olson to forfeit a portion of his bond. We raise this question sua sponte in recognition of our duty to resolve any doubts involving subject matter jurisdiction.[2] *See Achtor v. Pewaukee Lake Sanitary Dist.*, 88 Wis. 2d 658, 664, 277 N.W.2d 778, 781 (1979). An issue involving the scope of the trial court's power is a question of law which we review independently. *See State ex rel. Larsen v. Larsen*, 165 Wis. 2d 679, 682-83, 478 N.W.2d 18, 19 (1992).

In regards to this jurisdictional question, Olson challenges how the trial court chose to enforce its earlier restitution order. He concedes that the restitution provisions, specifically § 973.20(1), STATS., *amended,*

---

[2] The parties never raised this issue before the trial court but have responded to our request for supplemental briefs.

1995 Wis. Act 141, § 2,[3] allow a crime victim to enforce an outstanding award through either the civil judgment process outlined in ch. 815, STATS., or the civil contempt process set out in ch. 785, STATS. Nonetheless, he argues that a trial court has no jurisdiction to simply issue an order that assigns funds directly from a bond to the crime victim.

We agree and thus hold that the trial court's order is void as a matter of law. A trial court does not have authority to use a criminal bond to satisfy a restitution award. *State v. Cetnarowski*, 166 Wis. 2d 700, 710, 480 N.W.2d 790, 793 (Ct. App. 1992). There, the defendant argued that the bond he posted could not be reduced by restitution awards imposed as part of his sentence. *Id.* at 703, 480 N.W.2d at 790. We examined the bail statutes and concluded that they intentionally excluded restitution awards as expenses which could be applied to the defendant's bond. *See id.* at 710, 480 N.W.2d at 793. The trial court's order is therefore void because it violates the rule in *Cetnarowski* that bonds may not be used to satisfy unpaid restitution.

We now turn to Olson's original argument that Kaprelian is forever precluded from enforcing this award. This issue remains before us because our conclusion that the order attempting to enforce the restitution award is void does not answer whether Kaprelian may try to enforce it in some other manner.

Olson's argument goes as follows. Pointing to the civil settlement agreement, he contends that he believed that "he was settling the restitution issue."

---

[3] The legislature, in 1995 Wis. Act 141, renumbered and amended § 973.20(1), STATS., 1993-94, to § 973.20(1r). The amendments do not affect our analysis.

Olson argues, in essence, that he was trading his right to bring civil claims in exchange for Kaprelian's agreement to dismiss his civil case and to waive his claim to the restitution award.[4] While Olson describes in his briefs how "collateral estoppel" applies to bar Kaprelian, we need not address this doctrine because the restitution statutes contain a special procedure designed to provide the relief Olson seeks. Whether the facts (that is, the settlement agreement) meet the statutory requirements is a question of law which we review de novo. *See Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 758-59, 300 N.W.2d 63, 67-68 (1981).

The statutory section governing restitution allows a defendant to reduce civil damages awarded to the crime victim by amounts paid pursuant to a restitution order. *See* § 973.20(8), STATS. We read this statute to likewise enable a defendant to try to reduce the amount he or she owes because of a restitution award during settlement negotiations on the companion civil case. For such an agreement to be valid, however, the defendant must establish the "validity and amount" of this "setoff" in a hearing before the trial court conducting the civil action. *Id.* The statute places the burden on the defendant to establish that the outstanding restitution order has been included in the calculation of any civil settlement.[5]

---

[4] This conclusion is partially based on our review of the record. For example, Olson argued to the trial court that a series of letters exchanged between counsel in early 1993 included references to the outstanding restitution that Olson still owed. Olson thus claimed that these letters provided evidence of the parties' intent to settle the restitution order and civil claims together in one agreement.

[5] Here, the victim first acquired a restitution order and then pursued a civil claim. However, the victim who first secures a

Applying these guidelines to this civil settlement, we conclude that Olson has failed to meet these mandates. The civil settlement was approved by the trial court. However, the court approving the settlement never conducted a hearing to test whether the restitution order was validly "set off." *See id.* Indeed, the language of the settlement only refers to Kaprelian's civil complaint. It makes no reference to the restitution order. We thus hold that Olson's attempt to "set off" the restitution award failed to meet the requirements within § 973.20(8), STATS.

In conclusion, we deem void as a matter of law the order which reduced Olson's bond by the amount of the unsatisfied restitution award. We reject, however, Olson's argument that his civil settlement with Kaprelian included the outstanding restitution award and now precludes Kaprelian from trying to enforce it in some other manner.[6]

*By the Court.*—Order reversed.

civil remedy may nonetheless face a defendant who claims that any restitution award should be set off with the damages already paid in the civil judgment. *See* § 973.20(14)(b), STATS. ("The defendant may assert any defense that he or she could raise in a civil action for the loss sought to be compensated."). Indeed, another panel of this court recently addressed such a scenario in *State v. Sweat*, 202 Wis. 2d 366, 550 N.W.2d 709 (Ct. App. 1996).

[6] Kaprelian moved for costs and attorney's fees arguing that this appeal was frivolous. *See* RULE 809.25(3), STATS. This motion is denied.