Theresa HUML,
Plaintiff-Respondent,

v.

Robert W. VLAZNY,
Defendant-Appellant,

Todd J. CECCHI, Roy Cecchi,
The St. Paul Companies, Inc.,
a/k/a St. Paul Fire & Marine Insurance Company,
and St. Paul Insurance Company of Illinois,
Defendants.

Supreme Court

*No. 2004AP36. Oral argument March 2, 2006.
—Decided July 7, 2006.*

2006 WI 87

(Also reported in 716 N.W.2d 807.)

169

172

For the defendant-appellant there were briefs by *John C. Thomure, Jr., Timothy M. Hansen, Jonathan C. Wertz,* and *Michael Best & Friedrich LLP,* Milwaukee, and oral argument by *Timothy M. Hansen* and *Jonathan C. Wertz.*

For the plaintiff-respondent, there was a brief by *Michael J. Jassak, Kristin M. Cafferty,* Racine, *James P. Martin,* Lake Geneva, and *Habush Habush & Rottier, S.C.,* and oral argument by *Kristin M. Cafferty.*

¶ 1. DAVID T. PROSSER, J. This case is before the court on certification by the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (2003–04).[1] It addresses the relationship between the restitution order in a criminal case and a subsequent settlement agreement in a civil case. The Walworth County Circuit Court, John R. Race, Judge, dismissed Robert Vlazny's (Vlazny) motion to enforce a settlement agreement to preclude Theresa Huml (Huml) from enforcing a judgment derived from a criminal restitution order, after Vlazny was released from probation.

¶ 2. We are presented with two issues. First, may a civil settlement agreement between a crime/tort victim and a criminal defendant/tortfeasor preclude the victim from collecting unpaid restitution that the defendant was ordered to pay in the criminal proceeding, after the defendant's probation ends and the unpaid restitution is reduced to a civil judgment pursuant to Wis. Stat. §§ 973.09(3)(b) and 973.20(1r)? Second, did the settlement agreement between Theresa Huml and Robert Vlazny preclude Huml from enforcing the civil judgment derived from the restitution order?

¶ 3. Vlazny argues that Wis. Stat. § 973.09(3)(b) requires a court to enter a civil judgment for the amount of unpaid restitution when probation ends. When this occurs, he contends, an existing settlement agreement between the defendant and the victim may preclude the victim from enforcing the judgment. He claims that his settlement agreement with Huml bars her from enforcing the judgment.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

¶ 4. Huml responds that Vlazny's position is contrary to Wis. Stat. § 973.20(1r), which provides that after probation terminates, unpaid restitution "is enforceable in the same manner as a judgment in a civil action by the victim[.]" She contends that the phrase "in the same manner as a civil judgment" indicates that it is not a civil judgment. Huml reasons that her interpretation is consistent with the notion that a restitution judgment is criminal in nature and should not be extinguished by a civil settlement agreement. Therefore, Huml concludes, her settlement agreement with Vlazny cannot preclude her from enforcing the restitution order once it is reduced to a judgment.

¶ 5. We conclude that a civil settlement agreement can have no effect upon a restitution order while the defendant remains on probation, unless the circuit court finds that enforcing the restitution order in addition to the settlement agreement would result in a double recovery for the victim. After a defendant is released from probation, however, and any unpaid restitution under the restitution order is converted to a civil judgment, a settlement agreement between the victim and defendant may—depending upon its terms —preclude the victim from enforcing the judgment. We conclude that the global settlement agreement that Huml entered into with Vlazny precludes her from enforcing the judgment converted from the restitution order.

¶ 6. Accordingly, we reverse the judgment of the circuit court.

## I. BACKGROUND

¶ 7. On June 20, 1993, Vlazny seriously injured Huml when the automobile he was driving collided

176

head-on with Huml's car. Prior to the accident, Vlazny had been drinking. On November 11, 1993, Vlazny was convicted of injury by intoxicated use of a vehicle, in violation of Wis. Stat. § 940.25(1)(a). The circuit court sentenced Vlazny to two years imprisonment but stayed the sentence and placed him on three years probation.[2] As a condition of probation, the circuit court initially ordered Vlazny to pay $500,000 in restitution to Huml. Subsequently, the circuit court amended the restitution order after Vlazny and Huml stipulated, pursuant to Wis. Stat. § 973.20(13)(c), that restitution should be set at $140,000, payable for the duration of probation in monthly installments of $425.

¶ 8. At a January 24, 1994, restitution hearing, Court Commissioner Paul Barrett noted that the parties' agreed-upon restitution schedule would leave the majority of the ordered restitution unpaid at the end of Vlazny's probation.[3] Assistant District Attorney Steven Watson informed the commissioner that Huml planned to initiate a civil suit against Vlazny, and that any restitution payments would be set off in the civil suit.

¶ 9. On May 16, 1995, Huml filed a civil action against Vlazny and the insurer of the car he was driving, St. Paul Fire and Marine Insurance Company (St. Paul). Watson, who had left the district attorney's office, represented Huml in her civil suit. Huml settled her suit against Vlazny and St. Paul on December 12, 1996. The settlement agreement provided:

> The parties agree that in consideration of *the full discharge of past, present and future claims* arising out

---

[2] In addition, Vlazny served 361 days in the Walworth County Jail in connection with the crime.

[3] Had Vlazny remained on probation for three years, he would have paid to Huml a total of $15,300.

of the allegations set forth in Plaintiff's Amended Complaint . . ., as a result of the alleged actions or omissions of Defendants, Insurer agrees to pay the sum hereinafter specified. . . .

*This* Settlement Agreement and *Release shall apply to all claims,* whether known or unknown, on the part of all parties to this Agreement. In consideration of the payments called for herein, *Plaintiff completely releases and forever discharges Defendants,* Insurer, and their agents . . . *from any or all claims,* actions, *causes of action, demands,* rights, *damages,* costs, loss of service, expenses and compensation *whatsoever,* including court costs, legal expenses and attorneys' fees which the undersigned now has or had or *which may hereafter accrue* on account of or in any way arising out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries . . . resulting from the accident, casualty or event listed in Plaintiff's Amended Complaint. (Emphasis added.)

In exchange for releasing Vlazny and St. Paul, Huml received an initial lump sum payment of $548,000, monthly payments for the rest of her life in increasing amounts, and larger periodic payments paid on average every 16 to 18 months.

¶ 10. Meanwhile, Vlazny remained on probation. Because his restitution payments were sporadic, his probation was twice extended by the court. In August 2002, more than eight years after Vlazny was sentenced, his probation agent recommended that Vlazny be released from probation and that the unpaid restitution be reduced to a civil judgment. The circuit court terminated Vlazny's probation in December 2002. He had paid $33,705 to Huml, leaving a balance of $107,900.46. Pursuant to Wis. Stat. § 973.09(3)(b), the circuit court entered judgment for Huml against Vlazny for the amount of unpaid restitution.

¶ 11. When Huml attempted to enforce the judgment against Vlazny, Vlazny filed a motion in the criminal court to vacate the judgment or reduce it to zero, arguing that the settlement agreement precluded Huml from enforcing the judgment. The criminal court ruled that the matter became a civil matter when the restitution order was reduced to judgment, and it directed Vlazny to proceed in civil court. Accordingly, Vlazny filed a motion to enforce the settlement agreement in civil court.

¶ 12. The circuit court denied Vlazny's motion to reduce the judgment to zero, concluding that the settlement agreement had no effect upon Huml's ability to enforce the judgment. Vlazny appealed and the court of appeals certified the following question: "Whether a written settlement agreement and release discharging a defendant from civil liability for all past, present and future claims arising out of his or her criminal conduct precludes the crime victim from enforcing a subsequent judgment for unpaid restitution entered after the defendant has been released from probation." *Huml v. Vlazny*, No. 2004AP36, unpublished certification (Wis. Ct. App. Sept. 14, 2005).

## II. STANDARD OF REVIEW

██

¶ 13. The issue presented requires us to interpret Wis. Stat. §§ 973.09(3)(b) and 973.20(1r), which we do independent of the circuit court's analysis. *State v. Sweat*, 208 Wis. 2d 409, 414–15, 561 N.W.2d 695 (1997). Additionally, we must review the settlement agreement to determine whether the parties intended it to encompass the restitution judgment. Contract interpretation and whether a contract is ambiguous are both questions

179

of law we review de novo. *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶¶ 22, 23, 233 Wis. 2d 314, 607 N.W.2d 276.

## III. STATUTORY INTERPRETATION

¶ 14. In statutory interpretation, we begin with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is unambiguous after considering the text of the statute, its context, and any policies evident from the text, our analysis ordinarily stops and we give effect to the intent of the legislature as set forth in the plain language of the statute. *Id.*, ¶¶ 46, 48. In the absence of ambiguity, we do not look to extrinsic sources to ascertain legislative intent, except to bolster the plain meaning interpretation. *Id.*, ¶ 51.

¶ 15. A statute is ambiguous when it is susceptible to more than one reasonable interpretation. *Id.*, ¶ 47. "Ambiguity can be found in the words of the statutory provision itself, or by the words of the provision as they interact with and relate to other provisions in the statute and to other statutes." *Sweat*, 208 Wis. 2d at 416. We conclude that when they are juxtaposed, Wis. Stat. §§ 973.09(3)(b) and 973.20(1r) are ambiguous.

¶ 16. On one hand, Wis. Stat. § 973.09(3)(b) plainly requires a circuit court to inform the probationer that a "civil judgment" will be entered against him for the amount of unpaid restitution. Section 973.09(3)(b) states:

> If the court does not extend probation, it shall issue a judgment for the unpaid restitution and direct the clerk of circuit court to file and enter the judgment in the

180

judgment and lien docket, without fee, unless it finds that the victim has already recovered a judgment against the probationer for the damages covered by the restitution order. If the court issues a judgment for the unpaid restitution, the court shall send to the person at his last-known address written notification that a *civil judgment* has been issued for the unpaid restitution. The judgment has the same force and effect as judgments entered under s. 806.10. (Emphasis added.)

The statute appears to provide that upon completion of a defendant's probation, the circuit court shall enter a "civil judgment" "for the unpaid restitution," "unless it finds that the victim has already recovered a judgment against the probationer for the damages covered by the restitution order." This judgment has the same force and effect as other judgments for money under Wis. Stat. § 806.10. Accordingly, the statute implies that a separate settlement agreement could encompass the judgment derived from the restitution order and could preclude the victim from enforcing the judgment.

¶ 17. On the other hand, Wis. Stat. § 973.20(1r) suggests a judgment derived from a restitution order retains its nature as restitution, but that the victim may enforce the judgment by using civil enforcement mechanisms (e.g., attachment or garnishment) or by seeking remedial sanctions for contempt. Section 973.20(1r) states: "After the termination of probation, . . . restitution ordered under this section is enforceable in the same manner as a judgment in a civil action by the victim named in the order to receive restitution or enforced under ch. 785." Based on this statute, a reasonable person might conclude that any unpaid restitution, even when reduced to a judgment, retains its nature as restitution and cannot be bargained away in a settlement agreement.

¶ 18. To resolve the ambiguity in the relationship between Wis. Stat. §§ 973.09(3)(b) and 973.20(1r), we look to the broad context of these two statutes.

¶ 19. Wisconsin Stat. § 973.09 grants a circuit court the authority to impose probation upon a criminal defendant. Probation serves two purposes, to rehabilitate the defendant and to protect society and the public interest. *State v. Gray*, 225 Wis. 2d 39, 68, 590 N.W.2d 918 (1999); *Huggett v. State*, 83 Wis. 2d 790, 798, 266 N.W.2d 403 (1978).

¶ 20. In furtherance of these dual purposes, Wis. Stat. § 973.09(1)(b) requires a court to impose restitution upon any person placed on probation, "unless the court finds there is substantial reason not to order restitution as a condition of probation." As a condition of probation, restitution tends to promote rehabilitation by "strengthening the individual's sense of responsibility." *Huggett*, 83 Wis. 2d at 798. Restitution makes at least some of the injury inflicted upon the victim tangible to the defendant. The primary purpose of restitution, however, is to compensate the victim, thereby advancing society's interest in seeing victims made whole. *See Sweat*, 208 Wis. 2d at 422; *Huggett*, 83 Wis. 2d at 798; *State v. Canady*, 2000 WI App 87, ¶ 8, 234 Wis. 2d 261, 610 N.W.2d 147.

¶ 21. The link between Wis. Stat. §§ 973.09 and 973.20 appears in § 973.09(1)(b), which contains a cross-reference to § 973.20. Section 973.20 dictates the requirements and limitations of restitution orders.[4]

---

[4] For instance, Wis. Stat. § 973.20 prescribes: (a) how to value the amount of restitution depending on the nature of the crime, § 973.20(2) to (4m); (b) what types of damages may be included in a restitution order, § 973.20(5); (c) to whom resti-

¶ 22. An overview of Wis. Stat. §§ 973.09 and 973.20 reveals that a fundamental policy of these statutes is to make victims whole without allowing them to receive double recoveries. To achieve this result, the statutes afford three opportunities to avoid double recovery. First, a defendant may assert any defense, including accord and satisfaction or setoff, in the sentencing hearing at which the circuit court determines whether to impose restitution. § 973.20(14)(b); *Sweat,* 208 Wis. 2d at 424. Second, before a circuit court reduces any unpaid restitution to a civil judgment, the probationer may prove that the victim has already recovered damages from him that are the same as the damages covered by the restitution order. § 973.09(3)(b). Third, in a civil action a defendant may prove that restitution payments set off part or all of a civil judgment in favor of the victim. § 973.20(8).

¶ 23. The procedural posture of this case does not fit snugly within any of these three scenarios. Huml and Vlazny did not enter into the settlement agreement until after the sentencing court imposed the restitution order. We cannot tell—because we do not have the record—whether Vlazny had the opportunity to object to the entry of the civil judgment for the $107,900.46 of unpaid restitution.[5] In any event, Vlazny does not seek

tution must be paid and in what sequence, § 973.20(5)(d), (6), (7), and (9); and (d) when and how restitution payments are made, § 973.20(10) to (12).

[5] Wisconsin Stat. § 973.09(3)(b) requires the sentencing court to "hold a probation review hearing prior to the expiration date [of probation], unless the hearing is voluntarily waived by the probationer . . . ." If the probation review hearing is waived, the sentencing court must issue a judgment for the unpaid restitution. If the review hearing is not waived, the court must

to set off from the settlement agreement the amount of restitution he paid.[6] Rather, Vlazny claims his settlement agreement with Huml precludes her from enforcing the judgment derived from the unpaid restitution.

¶ 24. Because the timing of events in this case does not fit cleanly into the statutory scheme, and because Huml and Vlazny present competing reasonable interpretations, we look to (1) legislative history; (2) relevant case law; and (3) public policy to determine which interpretation best accords with legislative intent.

A. Legislative History

¶ 25. The relevant portions of Wis. Stat. §§ 973.09(3)(b) and 973.20(1r) are the result of two bills crafted by the Judicial Council, 1987 Assembly Bill 190, enacted as 1987 Wisconsin Act 398, and 1989 Assembly Bill 316, enacted as 1989 Wisconsin Act 188, §§ 1 and 2. Included in 1987 Wisconsin Act 398 are Judicial Council notes that explain the changes made by the Act.

¶ 26. Three notes are of interest. The first, the Judicial Council Prefatory Note, summarizes the changes to the then-existing law, and states that the Act "allows unpaid restitution to be enforced by the victim *as a civil judgment* when the offender is released from probation . . . ." 1987 Wis. Act 398 (emphasis added).

---

issue a judgment for the unpaid restitution "unless it finds that the victim has already recovered a judgment against the probationer for the damages covered by the restitution order." We do not know if the sentencing court complied with either alternative before reducing the $107,900.46 to judgment.

[6] Despite paying $33,705 in restitution to Huml, Vlazny has not sought to recover this amount by arguing that it should be set off against the amount Huml recovered under the settlement agreement.

184

¶ 27. The second Judicial Council note elaborates on this point, stating:

> The *availability of a civil judgment* for unpaid restitution enforceable by the victim under s. 973.20(1), stats., substantially reduces the necessity of extending probation solely for the purpose of enforcing court-ordered payments, a practice of questionable cost-effectiveness. [citation omitted] Probation may, however, be extended upon stipulation of the defendant, to enforce community service in satisfaction of restitution, or when the probationer has not made a good faith effort to make restitution or other payments.

Judicial Council Committee Note, 1987, Wis. Stat. § 973.09 (emphasis added).

¶ 28. The third relevant Judicial Council note states that Wis. Stat. § 973.20 "allows restitution unpaid at the time probation or parole supervision terminates to be enforced by the victim *as a judgment creditor.*" Judicial Council Committee Note, 1987, Wis. Stat. § 973.20 (emphasis added). These Judicial Council notes demonstrate a legislative intent that unpaid restitution be converted to a civil judgment upon the termination of probation.

¶ 29. Governor Tommy Thompson vetoed the language in 1987 Assembly Bill 190 that would have converted a restitution order into a civil judgment.[7] Gov. Tommy Thompson, Veto Message to Assembly Bill 190 (available at Legislative Reference Bureau, Madi-

---

[7] Governor Thompson vetoed the following language from what would have been Wis. Stat. § 973.09(3)(b):

> If the court does not extend probation, it shall issue a judgment for the unpaid restitution and direct the clerk to file and docket a transcript of the judgment, without fee, unless it finds that the victim has already recovered a judgment against the probationer for the damages covered by the restitution order. The clerk shall

son, Wisconsin). In his veto message, Governor Thompson explained that he vetoed these provisions because they raised constitutional concerns. *Id.* Specifically, Governor Thompson objected to the fact the bill would have allowed a civil judgment to be entered without a separate trial to establish the propriety of restitution or its amount. *Id.*

¶ 30. The effect of Governor Thompson's veto was to perpetuate the practice of requiring crime victims to whom restitution was owed to institute separate civil actions to collect any unpaid restitution once a defendant was released from probation. *See* Legislative Reference Bureau Drafting File for 1989 Wis. Act 188, *Analysis by the Legislative Reference Bureau* of 1989 Assembly Bill 316.

¶ 31. In response to the veto, the Judicial Council sponsored 1989 Assembly Bill 316, which contained language nearly identical to that which was vetoed by the Governor. In a memo to the Senate Judiciary and Consumer Affairs Committee, James Fullin, Executive Secretary of the Judicial Council and the Reporter for the Judicial Council Restitution Committee, explained that (1) the proposal to allow a circuit court "to enter a civil judgment for unpaid restitution" was modeled on federal law, the Victim and Witness Protection Act of

---

send a copy of the judgment to the victim. The judgment has the same force and effect as judgments docketed under ss. 806.10 and 809.25.

1987 Wis. Act 398, § 37.

Likewise, Governor Thompson vetoed the stricken text in what would have been Wis. Stat. § 973.20(1): "After the termination of probation . . ., restitution ordered under this section is enforceable ~~in the same manner as a judgment~~ in a civil action by the victim named in the order to receive restitution or enforced under ch. 785." *Id.,* § 43.

186

1982 (VWPA);[8] and (2) at least six federal circuits had upheld the analogous federal provision against constitutional challenges. Memorandum from James Fullin to Senate Judiciary and Consumer Affairs Committee (Jan. 9, 1990) (available at the Wisconsin State Law Library). On April 10, 1990, 1989 Assembly Bill 316 was enacted as 1989 Wisconsin Act 188, creating the language at issue in this case. Thus, although the three above-described Legislative Council notes were part of 1987 Wisconsin Act 398, they apply with equal force to explain 1989 Wisconsin Act 188.

¶ 32. In addition to the Judicial Council notes, the analysis of 1989 Assembly Bill 316 by the Legislative Reference Bureau, which is printed on the bill, stated:

> Under present law, if a probationer or parolee does not pay the court-ordered restitution in full prior to termination of the probation or parole, or if a defendant not placed on probation or parole fails to pay the court-ordered restitution, the victim may start a civil action to collect any unpaid restitution. The victim may start a civil action, obtain a judgment for the unpaid restitution, and proceed with collection procedures on the judgment. *Under this bill, restitution unpaid at the end of a probation or parole period is docketed as a civil judgment* if the victim has not already obtained a judgment for the damages covered by the restitution order.

Legislative Reference Bureau Drafting File for 1989 Wis. Act 188, *Analysis by the Legislative Reference Bureau* of 1989 Assembly Bill 316 (emphasis added).

---

[8] The relevant portion of the VWPA stated: "An order of restitution may be enforced . . . by the victim named in the order to receive the restitution *in the same manner as a judgment in a civil action.*" 18 U.S.C. § 3663(h) (1982 & Supp. IV 1987) (emphasis added). This provision was initially codified at 18 U.S.C. § 3579(h) (1982). *See* Victim and Witness Protection Act of 1982, Pub. L. No. 97–291 § 5.

¶ 33. The legislative history, therefore, demonstrates that the drafters—and, in turn, the legislature —intended a restitution order to become a civil judgment upon the completion of probation. The changes effected by 1987 Wisconsin Act 398 and 1989 Wisconsin Act 188 streamlined the procedure to reduce unpaid restitution to a civil judgment. Based in part on this underlying history, we conclude the more reasonable interpretation of the phrase "in the same manner as a judgment in a civil action" in Wis. Stat. § 973.20(1r) is that the resulting judgment is a civil judgment. The conditional language in the statute may reflect the abbreviated procedure by which the judgment was obtained, but it does not diminish the fact that the judgment is a civil judgment.

¶ 34. Simplifying the procedure by which a victim obtains a judgment to enforce unpaid restitution is entirely consistent with the overarching purposes of the legislation: to promote the dignity of crime victims, to maximize the respect afforded victims by the criminal justice system, and to increase the amount of restitution recovered. Allowing a victim to negotiate to extinguish his or her interest in a judgment derived from a restitution order as part of a global settlement is consistent with the legislature's desire to afford respect to the dignity of victims.

B. Relevant Case Law

1. Wisconsin Case Law

¶ 35. The parties focus their analyses on three Wisconsin cases: *Sweat; State v. Walters,* 224 Wis. 2d 897, 591 N.W.2d 874 (Ct. App. 1999); and *Olson v. Kaprelian,* 202 Wis. 2d 377, 550 N.W.2d 712 (Ct. App.

1996). Consequently, a brief summary and discussion of each case is necessary.

■■■■

¶ 36. In *Sweat* the defendant claimed a civil statute of limitations barred the state from seeking restitution. *Sweat,* 208 Wis. 2d at 412. The defendant relied upon Wis. Stat. § 973.20(14)(b), which states in part, "[t]he defendant may assert any defense that he or she could raise in a civil action for the loss sought to be compensated." The court rejected the defendant's argument. *Id.* at 414. Instead, it interpreted § 973.20(14)(b) to mean that in a restitution proceeding a defendant may raise any defense that goes to the amount of restitution, such as mitigation, setoff, or accord and satisfaction.[9] *Id.* at 424.

¶ 37. The availability of accord and satisfaction and setoff as defenses to the amount of restitution a circuit court can order supports the idea that a victim can give up her right to enforce a judgment derived from a restitution order. Of course, a settlement agreement does not necessarily prevent the circuit court from ordering restitution, *Walters,* 224 Wis. 2d at 905, nor does it necessarily prevent enforcement of a restitution order during the term of probation. Only if a circuit court first finds that enforcement of the restitution order would result in double recovery for the victim

---

[9] "Accord and satisfaction" means "[a]n agreement to substitute for an existing debt some alternative form of discharging that debt, coupled with the actual discharge of the debt by the substituted performance." *Black's Law Dictionary* 17 (7th ed. 1999).

Accord and satisfaction "bars further liability when an offer of performance in exchange for full satisfaction of a disputed claim is accepted and the promised performance occurs." *State v. Walters,* 224 Wis. 2d 897, 904, 591 N.W.2d 874 (Ct. App. 1999).

can a settlement agreement affect a circuit court's authority to enter or enforce a restitution order while a defendant remains on probation.

¶ 38. The court has broad power to require restitution, so long as the restitution serves statutory purposes. Restitution serves the dual purposes of making the victim whole and rehabilitating the defendant. *Sweat,* 208 Wis. 2d at 423. If a restitution order does not serve both purposes, restitution is not appropriate. Thus, if a settlement agreement fails to make the victim whole—as determined independently by the circuit court—the court may enter a restitution order and enforce it while the defendant remains on probation. *See Herr v. Lanaghan,* 2006 WI App 29, ¶¶ 19–20, 289 Wis.2d 440, 710 N.W.2d 496.

¶ 39. In *Walters* the court of appeals held that a civil settlement does not restrict the power of a court to order a defendant to pay restitution *after* the defendant and victim settle. *Walters,* 224 Wis. 2d at 899. Like the present case, *Walters* arose out of an automobile accident for which the defendant was convicted of operating an automobile while intoxicated. *Id.* The defendant in *Walters* argued that a civil settlement, which included a release for "all claims and damages" that resulted from the accident, should prevent a circuit court from being able to enter a restitution order. *Id.* at 899–900. The court of appeals rejected the defendant's contention, explaining that restitution is a remedy that belongs to the State and that "a victim has no independent claim to restitution which he or she can release . . . ." *Id.* at 904–05. Significantly, in *Walters,* the defendant made no attempt to prove that enforcement of the restitution order would result in a double recovery for the victim. *Id.* at 899–900. Moreover, unlike the present case,

*Walters* did not address what happens to a restitution order upon the termination of probation.

¶ 40. In *Olson* the court of appeals confronted a sequence of events the reverse of that presented in *Walters*. In *Olson* the criminal court entered a restitution order *before* the parties entered into a settlement agreement.[10] *Olson,* 202 Wis. 2d at 380. After a subsequent settlement, the victim attempted to enforce the outstanding restitution order. *Id.* at 380. The court of appeals acknowledged that a civil settlement and a pre-existing restitution order could affect one another. *Id.* at 383. The court of appeals explained that under Wis. Stat. § 973.20(8) restitution payments may offset the amount of a judgment or settlement in a civil action. *Id.* Before this can occur, however, the party seeking setoff must show that the victim stood to reap a double recovery. *Id.* The court of appeals concluded that because the defendant had not met this burden, the parties' settlement had no effect upon enforcement of the restitution order. *Id.* at 383–84.

¶ 41. Finally, in a letter to the court that called our attention to supplemental authority, Huml invokes *Herr.* In *Herr* the defendant sought to reopen a civil judgment entered pursuant to a settlement agreement to offset it by the amount of the restitution order imposed by the criminal court after the parties had settled. *Herr,* 710 N.W.2d 496, ¶ 6. The court of appeals affirmed the circuit court's decision to reopen the civil judgment, but reversed and remanded the circuit

---

[10] The settlement agreement in *Olson* was much narrower than that agreed to by Huml and Vlazny. It provided: "That the Complaint of Kaprelian, and each of the causes of action contained therein, whether pleaded or not, may be dismissed upon the merits, with prejudice, without costs and without further notice." *Olson v. Kaprelian,* 202 Wis. 2d 377, 380, 550 N.W.2d 712 (Ct. App. 1996).

court's decision to grant the defendant the offset. *Id.,* ¶ 16. The court of appeals held that before setoff was appropriate, the circuit court first had to determine whether the damages covered in the civil judgment were the same as the special damages[11] covered in the restitution order (i.e., would the result of enforcing both the restitution order and the civil judgment be double recovery). *Id.,* ¶ 20.

¶ 42. *Walters, Olson,* and *Herr* do not address what happens to unpaid restitution upon the completion of probation. Accordingly, we agree with Vlazny that Huml's reliance on these cases is misplaced. We decline Huml's invitation to extend the holdings of these cases—that a defendant must prove double recovery before a settlement agreement can affect a restitution order—to proceedings after the defendant is released from probation.

¶ 43. Huml's position is further undermined by *State v. Davis,* 127 Wis. 2d 486, 381 N.W.2d 333 (1986). Thelmer Davis was placed on probation for five years and ordered to pay restitution for committing welfare fraud. *Id.* at 487–88. Three times the circuit court extended Davis's probation because restitution remained unpaid. *Id.* at 489–491. This court concluded it was inappropriate to extend probation when the only reason to do so was to collect unpaid restitution. *Id.* at

---

[11] A restitution order is limited to special damages. Wis. Stat. § 973.20(5)(a). Special damages mean "any readily ascertainable pecuniary expenditure paid out because of the crime." *State v. Johnson,* 2005 WI App 201, ¶ 12, 287 Wis. 2d 381 704 N.W.2d 625 (interpreting § 973.20(5)). General damages, such as pain and suffering, may not be imposed as part of a criminal restitution order. *State v. Behnke,* 203 Wis. 2d 43, 60–61, 553 N.W.2d 265 (Ct. App. 1996).

497–98. We explained the circuit court's decision to extend Davis's probation was an erroneous exercise of discretion because it effectively transformed the criminal justice system into a collection agency "to collect what eventually became no more than a civil debt." *Id.* at 499. *Davis,* therefore, stands for the proposition that once the penal and rehabilitative purposes of restitution have been served, only a civil debt remains. *Id.; see also Huggett,* 83 Wis. 2d at 803–04.

¶ 44. It is true that restitution in a criminal case is a remedy that belongs to the state, not to the victim. *Walters,* 224 Wis. 2d at 904. Termination of probation, however, signals the state's disavowal of any penal or rehabilitative interests. *Cf. State v. Jackson,* 128 Wis. 2d 356, 365–66, 382 N.W.2d 429 (1986); *Huggett,* 83 Wis. 2d at 803–04. Thereafter, only the goal of compensating the victim remains. This is an objective adequately accomplished by entry of a civil judgment, which can be enforced through civil enforcement mechanisms. Consequently, it is consistent with Wisconsin precedent to allow a victim, in anticipation of the defendant completing probation, to release her right to enforce any judgment derived from unpaid restitution as part of a settlement agreement.

2. Federal Case Law

¶ 45. Wisconsin Stat. § 973.20(1r) was based in part on the federal VWPA, specifically 18 U.S.C. § 3663(h) (1982 & Supp. IV 1987).[12] *See* Judicial Council Committee Note, 1987, Wis. Stat. § 973.20. Conse-

---

[12] All references to 18 U.S.C. § 3663(h) are to the 1982 edition of the United States Code as updated by Supplement IV in 1987.

quently, Huml relies to a considerable extent upon federal case law interpreting this provision.[13]

¶ 46. 18 U.S.C. § 3663(h) provided:

> An order of restitution may be enforced by the United States in the manner provided in sections 1812 and 1813 or in the same manner as a judgment in a civil action, and by the victim named in the order to receive the restitution in the same manner as a judgment in a civil action.

As the Judicial Council note indicates, the phrase, "in the same manner as a judgment in a civil action[]" in Wis. Stat. § 973.20(1r) was imported from 18 U.S.C. § 3663(h). Despite copying some language from 18 U.S.C. § 3663(h), there is a critical difference between Wis. Stat. § 973.20(1r) and 18 U.S.C. § 3663(h). Unlike the analogous Wisconsin provisions, neither 18 U.S.C. § 3663 nor any other section of the VWPA contains a provision that directs a court to enter a judgment against the defendant for any unpaid restitution when probation ends. Consequently, the federal cases cited by Huml merely hold (1) that the availability of civil enforcement mechanisms does not convert a restitution order into a civil judgment; and (2) the existence of a settlement agreement cannot preclude a district court from entering a restitution order. *See e.g., Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 703 (2d. Cir. 2000) ("§ 3663 contained no suggestion that a court *may* convert a restitution order into a civil judgment or

---

[13] "It is well established that federal cases may provide persuasive guidance to the proper application of state law copied from federal law." *State v. Gudenschwager,* 191 Wis. 2d 431, 439, 529 N.W.2d 225 (1995); *see State v. Szarkowitz,* 157 Wis. 2d 740, 751–52, 460 N.W.2d 819 (Ct. App. 1990) (also noting that Wis. Stat. § 973.20 is modeled on the VWPA).

modify a restitution order in a civil suit."); *United States v. Karam,* 201 F.3d 320, 328 (4th Cir. 2000); *United States v. Timilty,* 148 F.3d 1, 4 (1st Cir. 1998); *United States v. Sheinbaum,* 136 F.3d 443, 448 (5th Cir. 1998); *United States v. Johnson,* 983 F.2d 216, 220 (11th Cir. 1993); *United States v. Cloud,* 872 F.2d 846, 854 (9th Cir. 1989); *United States v. Satterfield,* 743 F.2d 827, 839 (11th Cir. 1984). Contrary to Huml's assertion, because of the differences in statutory language, cases interpreting 18 U.S.C. § 3663(h) are of little, if any, assistance in interpreting Wis. Stat. §§ 973.09(3)(b) and 973.20(1r).

C. Public Policy

¶ 47. Finally, Vlazny's interpretation of Wis. Stat. §§ 973.09(3)(b) and 973.20(1r) is consistent with good public policy. First, there is considerable value in permitting a victim to release her interest in a judgment derived from a restitution order because it allows the victim to settle the case and replace an uncertain, future recovery with a certain, immediate recovery.

¶ 48. Second, permitting a release gives a victim an additional source of leverage to negotiate a favorable settlement.

¶ 49. Third, there are safeguards to promote the recovery of restitution by victims. On the civil side, in most situations where a substantial dollar amount is at stake, a victim will be represented by an attorney when negotiating a settlement. Preserving the right to enforce a judgment derived from a restitution order, therefore, should be as simple as including an express exception in the settlement agreement. On the criminal side, because probation can be extended if a defendant with the ability to pay fails to make good faith efforts to

comply with a restitution order, *Huggett,* 83 Wis. 2d at 803, there should be little concern that defendants will be able to duck their restitution obligations. Furthermore, if restitution would result in double recovery for the victim, a circuit court can still enter a restitution order, "[i]f justice so requires," that imposes an obligation upon the defendant to "reimburse any insurer, surety or other person who has compensated a victim for a loss otherwise compensable under this section." Wis. Stat. § 973.20(5)(d).

¶ 50. For all these reasons, we conclude that a civil settlement agreement can have no effect upon a restitution order while the defendant is on probation unless the circuit court first finds that continued enforcement of the restitution order would result in a double recovery for the victim. After a defendant is released from probation and any unpaid restitution becomes a civil judgment, however, a settlement agreement between the victim and the defendant may preclude the victim from enforcing the judgment.

## IV. INTERPRETATION OF THE SETTLEMENT AGREEMENT

¶ 51. Having determined that a settlement agreement can preclude the enforcement of a judgment derived from a restitution order, we consider whether the terms of the settlement agreement between Vlazny and Huml have this effect.

¶ 52. The lodestar of contract interpretation is the intent of the parties. *Dieter v. Chrysler Corp.,* 2000 WI 45, ¶ 15, 234 Wis. 2d 670, 610 N.W.2d 832. In ascertaining the intent of the parties, contract terms should be given their plain or ordinary meaning. *Gold-*

*stein v. Lindner,* 2002 WI App 122, ¶ 12, 254 Wis. 2d 673, 648 N.W.2d 892. If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence. *Id.*

¶ 53. Vlazny contends the settlement agreement is clear; it bars Huml from enforcing "any or all claims, actions, causes of action, demands, rights, [or] damages," without any language to exclude judgments derived from unpaid restitution from the scope of the settlement. It discharges "in full" past, present, and future claims. In using such sweeping words as "any," "all," and "whatsoever," the settlement is "global" in its coverage. Huml does not dispute that the breadth of the language in the settlement agreement encompasses her judgment against Vlazny. Rather, she depends upon the argument that a judgment derived from a restitution order retains its nature as restitution and can never be affected by a settlement agreement, unless the defendant establishes that the victim would receive a double recovery.

¶ 54. We have already rejected Huml's argument. Once unpaid restitution imposed by a restitution order is reduced to a civil judgment under Wis. Stat. § 973.09(3)(b), a settlement agreement may take effect and preclude enforcement of the judgment.

¶ 55. We conclude that the global settlement agreement between Huml and Vlazny precludes Huml from enforcing the judgment for $107,900.46. The settlement agreement is a fully integrated contract intended to be the final expression of Huml and Vlazny's agreement. Absent ambiguity, it is improper to consider extrinsic evidence of intent. *Dairyland Equip.*

*Leasing, Inc. v. Bohen,* 94 Wis. 2d 600, 607, 288 N.W.2d 852 (1980); *Wis. End-User Gas Ass'n v. PSC,* 218 Wis. 2d 558, 567, 581 N.W.2d 556 (Ct. App. 1998). Because we conclude the plain language of the settlement agreement released all Huml's claims and rights to damages arising from the accident, we will not consider extrinsic evidence of a contrary intent. This settles the issue.

## V. CONCLUSION

¶ 56. We conclude that a civil settlement agreement can have no effect upon a restitution order while the defendant remains on probation, unless the circuit court finds that enforcing the restitution order in addition to the settlement agreement would result in a double recovery for the victim. After a defendant is released from probation, however, and any unpaid restitution under the restitution order is converted to a civil judgment, a settlement agreement between the victim and defendant may—depending upon its terms —preclude the victim from enforcing the judgment. We conclude that the global settlement agreement that Huml entered into with Vlazny precludes her from enforcing the judgment converted from the restitution order.

*By the Court.*—The judgment of the circuit court is reversed.

¶ 57. JON P. WILCOX, J. *(concurring).* I agree with the majority that after the defendant's probation ends unpaid restitution is reduced to a civil judgment pursuant to Wis. Stat. §§ 973.09(3)(b) and 973.20(1r) (2003–04). I also do not dispute that the right to enforcement of this judgment may be released by the parties. However, in my view where restitution has

been required in a criminal proceeding, any release in a settlement of a personal injury claim brought by the victim involved should contain express language that addresses the issue of future payments in restitution. Such express language certainly is preferable to the uncertainty that has been created by the actions and circumstances surrounding the issue of restitution in this case. Therefore, I respectfully concur.

¶ 58. I am not at all confident that the parties in this case contemplated, or future parties in a similar position will contemplate, unpaid criminal restitution as falling within the terms of a civil settlement agreement as a matter of course. Given the policies behind restitution, I conclude the better result for future victims entitled to restitution payments is an express release of their right to enforcement of a civil judgment resulting from unpaid criminal restitution.

¶ 59. The majority recognizes that the overarching purposes of 1987 Wisconsin Act 398 and 1989 Wisconsin Act 188 are: "to promote the dignity of crime victims, to maximize the respect afforded victims by the criminal justice system, and to increase the amount of restitution recovered." Majority op., ¶ 34. I agree; however, a better approach to achieving these three policy objectives is to require an express agreement to ensure that a victim truly intends to release her right to restitution payments after the defendant is released from probation.

¶ 60. Furthermore, restitution "serves the purposes of punishment and rehabilitation of the defendant, while seeking to make the victim of criminal acts whole in regard to the special damages sustained," *State v. Walters*, 224 Wis. 2d 897, 904, 591 N.W.2d 874 (Ct. App. 1999). Given these policy implications, I believe

that unpaid restitution should not be swept up into a settlement agreement that is silent to any such consideration.

¶ 61. The public has an interest in having defendants pay the full amount of restitution. The public wants victims to be made whole. It is one thing if the victim expressly settles the unpaid amount of restitution. It is another thing to have the defendant get off the hook because of a "global" settlement agreement that lacks any apparent contemplation of such a judgment.

¶ 62. The majority concludes that the "global" settlement agreement Huml signed approximately six years prior to Vlazny's termination "is a fully integrated contract intended to be the final expression of Huml and Vlazny's agreement." Majority op., ¶ 55. This settlement includes broad, boilerplate language, but it does not include any reference to judgments or restitution.

¶ 63. As I alluded to above, the actions of the parties seem to indicate that neither party intended for this agreement to include unpaid restitution after probation. Between December 1996, when the settlement agreement was signed and August 2002, Vlazny made 49 restitution payments, and at no time during his probation did Vlazny request any offset of his restitution payments based on the settlement agreement. Furthermore, at the time of Vlazny's release from probation, Vlazny's probation agent wrote that he had "spoken with the victim in the case and she has no objections to a Civil Judgment for restitution." If Huml had realized the settlement agreement encompassed an unpaid restitution judgment, she likely would have contested the release of Vlazny from probation.

¶ 64. Despite the apparent confusion surrounding the issue of restitution in this case, I ultimately agree with the majority that the broad language of the settlement agreement releases Vlazny from any requirement of making future restitution payments. However, given the legislative intent behind Wis. Stat. §§ 973.09(3)(b) and 973.20(1r) and the policies behind restitution, I would require victims to expressly release a civil judgment for unpaid restitution in settlement agreements.

¶ 65. I am authorized to state that Justice N. PATRICK CROOKS joins this opinion.