**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 11, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2283**

**STATE OF WISCONSIN**

Cir. Ct. No. **2017CF1409**

**IN COURT OF APPEALS**
**DISTRICT III**

MARK F. MEISNER,

PLAINTIFF-RESPONDENT,

DENISE M. MEISNER,

PLAINTIFF,

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY,

DEFENDANTS,

TRUMBULL INSURANCE COMPANY,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: KENDALL M. KELLEY, Judge. *Reversed and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Trumbull Insurance Company appeals a judgment finding it liable to Mark Meisner in the amount of $250,000, which was the maximum amount of underinsured motorist (UIM) coverage available under a policy Trumbull had issued to Meisner.  Trumbull asserts the circuit court erred by determining that a stipulation between Trumbull and Meisner was unambiguous and did not incorporate a reducing clause from the policy that reduced the liability limit by any amounts collected from the tortfeasor.  We conclude the stipulation is ambiguous in this regard.  We therefore reverse the judgment and remand for a determination of the parties' intent, using extrinsic evidence, regarding the agreed-to payment limits under the stipulation.

## BACKGROUND

¶2      In October 2014, Mark and Denise Meisner were injured in an automobile accident in Marinette County.  They subsequently filed suit against the driver of another vehicle involved in the accident, Jon Mineau, and his automobile liability insurer, State Farm Mutual Automobile Insurance Company.  The Meisners alleged that Mineau was underinsured relative to the amount of their injuries.  Accordingly, they also named Trumbull, their own automobile insurer, as a defendant, based upon the underinsured motorist (UIM) provisions of the policy Trumbull had issued to them.

¶3     The matter was ultimately set for a multi-day jury trial.  As the trial date approached, the Meisners reached a stipulation with Trumbull that excused Trumbull from participating in the trial.  The stipulation provided as follows:

> 1. Defendant Trumbull … shall be bound by the verdict reached at trial with respect to the underinsured motorist claim in this matter, *up to the limits of its underinsured motorist insurance policy issued to Plaintiffs Mark and Denise Meisner*.
>
> 2. Trumbull shall therefore be excused from appearance at or participation in the final-pretrial conference and trial in this matter.  Trumbull shall also be excused from any requirements in the Court's scheduling order regarding the filing of proposed jury instructions, a proposed special verdict form, and any pre-trial motions in limine.
>
> 3. During any absence at any proceeding or at the trial, Trumbull waives its right to object to any matter whatsoever, except that Trumbull shall be presumed to have joined in any objection or motion raised or made by Defendant State Farm Mutual Automobile Insurance Company.
>
> 4. Trumbull may continue to participate in currently scheduled depositions in this matter, including video depositions that may be played at trial.
>
> 5. No default judgment will be entered against Trumbull as to Plaintiffs' underinsured motorist claim that is based upon Trumbull's non-appearance at trial and nonparticipation in other pre-trial proceedings as stated herein.

(Emphasis added.)  The parties did not attach a copy of the insurance policy, and the circuit court ultimately approved the stipulation.[1]

¶4     The special verdict form used at trial asked the jury only to assess the damages suffered by the Meisners.  The jury concluded Mark Meisner's

---

[1] The original stipulation contains slight variations from the version approved by the circuit court, but those variations are not material to the issues presented here.

injuries resulted in damages totaling $424,354.[2]  State Farm subsequently agreed to pay its policy limit of $100,000 to Meisner.  Meisner then demanded judgment on the verdict against Trumbull in the remaining amount, $324,354.[3]  In the alternative, Meisner sought a judgment in the amount of $250,000—the per-person UIM policy limit identified on the declarations page of the Meisners' policy with Trumbull.

¶5      Trumbull opposed the motion, asserting the unambiguous language of the stipulation required application of not only the $250,000 policy limit, but also a reducing clause contained within the insurance policy.  The reducing clause stated that the limits of liability shown on the declarations page "shall be reduced by all sums … [p]aid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible."  As a result, Trumbull asserted that given State Farm's $100,000 payment, it was required to pay only $150,000 in UIM benefits.[4]

¶6      Following a nonevidentiary hearing and additional briefing, the circuit court entered a written decision concluding that the stipulation was

---

[2] The parties do not address the jury's assessment of damages suffered by Denise Meisner (who is not a respondent to this appeal), and therefore we will not consider any aspect of the judgment relating to her.

[3] This request was based on Trumbull's "failure to submit any evidence at the time of trial or by way of requests for admission to establish and prove its applicable policy limits." Meisner subsequently abandoned this request, and we will not further address it.

[4] Trumbull also filed a motion seeking to reopen the evidence so it could submit its insurance policy.  This motion was denied by the circuit court as untimely, but the court determined it would treat Trumbull's submissions attached therein as an addendum to its timely filed response to Meisner's motion after verdict.  As a result, the contents of the policy appear to have been properly before the court, and thus we do not address the issues the parties raise regarding the propriety of granting Trumbull's motion to reopen the evidence to submit the insurance policy.

unambiguous. The court determined the parties' use of the phrase "up to" in reference to the policy limits "contemplates that Trumbull will pay no more than the Policy limit, but the Stipulation fails to reference any other limiting language." Even though the stipulation did not specifically reference the $250,000 UIM policy limit, the court concluded that amount was clearly intended based upon Trumbull's repeated concession of that amount during discovery. It subsequently entered judgment against Trumbull in the amount of $250,000 for Meisner's injuries. Trumbull now appeals.

## DISCUSSION

¶7    We begin by rejecting Trumbull's reliance on ***Dowhower ex rel. Rosenberg v. West Bend Mutual Insurance Co.***, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557. Trumbull faults the circuit court for reaching an interpretation of the stipulation that, in Trumbull's view, "[d]isregard[ed] the mechanics of UIM coverage." Our supreme court in ***Dowhower*** accurately described a reducing clause as permitting a setoff from the insured's UIM coverage in the amount paid by the underinsured tortfeasor. ***Id.***, ¶1. ***Dowhower*** required the court to determine the constitutionality of the statutes authorizing reducing clauses in insurance policies and, in doing so, the court noted the statutes "establish that the UIM coverage limit purchased by the insured is reached by the combination of contributions from all legally responsible sources." ***Id.***, ¶20. But this general statement about the effect of the statutes does not resolve the issue presented

5

here: whether the parties' stipulation, as written, intended to apply the reducing clause contained in Trumbull's policy.[5]

¶8    To determine the meaning of the parties' stipulation, we apply standard principles of contract interpretation. *Stone v. Acuity*, 2008 WI 30, ¶67, 308 Wis. 2d 558, 747 N.W.2d 149. The interpretation of a stipulation must, above all, give effect to the parties' intentions. *Id.* "In determining the parties' intentions, the terms of a contract or stipulation 'should be given their plain or ordinary meaning.'" *Id.* (quoting *Huml v. Vlazny*, 2006 WI 87, ¶52, 293 Wis. 2d 169, 716 N.W.2d 807). If the agreement is unambiguous, our inquiry ends with the four corners of the contract, without considering extrinsic evidence. *Id.*

¶9    A contract is ambiguous when its terms are reasonably susceptible to more than one interpretation. *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. We analyze contract clauses in context, as they are reasonably understood, and we focus on the language the parties used and not their subjective intent. *Id.* Finally, we must interpret contracts to avoid absurd results. *Id.* The interpretation of a stipulation, including determining if ambiguity exists, presents a question of law that we review de novo. *Horizon Bank, Nat'l Ass'n v. Marshalls Point Retreat LLC*, 2018 WI 19, ¶30, 380 Wis. 2d 60, 908 N.W.2d 797; *Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶8, 266 Wis. 2d 124, 667 N.W.2d 751.

---

[5] Much of Trumbull's argument seems to gainsay the fact that the stipulation itself constitutes a separate contract—one entered into after a loss occurred triggering the insurance coverage claim at issue. As explained in this opinion, the stipulation is ambiguous as to the parties' intent regarding how much in UIM benefits Trumbull agreed to pay and how that amount was to be determined, including which portions of the policy were intended to govern that determination. Ignoring this key reality, many of Trumbull's arguments assume that this case involves only a standard interpretation and application of UIM coverage provisions in an insurance policy. This is classic question begging.

¶10     We conclude the stipulation is ambiguous regarding what the parties meant when using the phrase "up to the limits of its underinsured motorist insurance policy." The phrase can be reasonably interpreted in at least two ways. On one hand, it can be interpreted, as Meisner suggests, to refer solely to the $250,000 per-person UIM policy limit, unmodified by any other provisions of the insurance policy. On the other hand, it can be interpreted, as Trumbull suggests, to refer to the UIM liability limit that would apply taking into account the totality of the insurance agreement, including provisions like the reducing clause that modify the total limit of liability.

¶11     As a corollary, we reject the parties' competing assertions that the stipulation language unambiguously supports their preferred interpretation. Meisner suggests the phrase "up to the limits of its underinsured motorist insurance policy" necessarily refers to the "maximum benefit" Trumbull will pay to an insured: $250,000. Nothing in the stipulation, however, establishes $250,000 as the policy limit; rather, it is necessary to refer to the policy itself (or other extrinsic evidence, such as Trumbull's discovery responses) to ascertain that amount.[6] Conversely, nothing in the stipulation specifically incorporated other terms and conditions in the insuring agreement that might affect the limits of

---

[6] As both the circuit court and Trumbull noted, Trumbull consistently stated in its discovery responses that it was not waiving any objections based upon the terms, conditions and exclusions of the policy. Thus, to the extent Meisner attempted to rely on Trumbull's discovery responses as establishing that the stipulation only incorporated the $250,000 limit of liability and not any of the policy's other terms and conditions, that effort does not appear proper unless one were to conclude that the stipulation itself unambiguously adopted the base $250,000 limit— which it did not.

liability, like the reducing clause.[7] The specific amount the parties regarded as constituting the "limits of [Trumbull's] underinsured motorist insurance policy" is not obvious on the face of the stipulation.

¶12 When a contract is ambiguous and must be construed by the use of extrinsic evidence, the contract's interpretation presents a question of fact. **Town Bank v. City Real Est. Dev., LLC**, 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476. Extrinsic evidence can include the circumstances surrounding the contract's execution, the content of the parties' negotiations, and their acts and deeds before and after the contract was signed. **Kernz**, 266 Wis. 2d 124, ¶10 (collecting cases). No such complete inquiry occurred in this case, as the circuit court concluded the stipulation unambiguously failed to incorporate any of the UIM policy's limiting language.[8] Accordingly, we reverse the judgment and remand for further proceedings, including a determination of whether extrinsic evidence establishes, as a factual matter, the parties' intent regarding the phrase "up to the limits of its underinsured motorist insurance policy." Any additional discovery necessary for a full and proper determination of this issue should be permitted.

¶13 Two additional matters warrant consideration. First, Trumbull cautions that any interpretation of the stipulation that results in the inapplicability

---

[7] Trumbull asserts the stipulation unambiguously incorporated by reference the underlying UIM policy. That limited proposition is largely uncontested (after all, Meisner must also refer to the policy in question to establish the maximum $250,000 UIM benefit). The question is whether the stipulation was intended to incorporate only the base $250,000 per-person UIM limit of liability or whether it was intended to incorporate other policy provisions that affect the ultimate amount of that limit, including the reducing clause.

[8] In fairness to the circuit court, both parties principally argued that the stipulation *was* unambiguous regarding the amount Trumbull was required to pay; they just differed greatly in their interpretations in that regard.

of the reducing clause is "unusual or extraordinary," effectively producing absurdity. *See* **Columbia Propane, L.P. v. Wisconsin Gas Co.**, 2003 WI 38, ¶25, 261 Wis. 2d 70, 661 N.W.2d 776. To the contrary, we perceive nothing inherently unusual or extraordinary about an insurer, for strategic or other reasons, stipulating to pay damages in an amount greater than the amount it may be required to pay under its policy terms and conditions. *Cf.* **Stone**, 308 Wis. 2d 558, ¶¶65-76 (holding that insurer was obligated to pay $500,000 as promised by stipulation upon appellate court finding insurance coverage existed, even though the "read in" level of coverage was much less). To the extent Trumbull argues it is inconceivable to believe it agreed to waive the policy terms and conditions under the circumstances here, an assessment of the reasonableness of the parties' positions can be undertaken on remand when considering any extrinsic evidence of meaning the parties may ascribe to the pertinent stipulation language.

¶14    Second, Meisner proposes that the stipulation should be construed against Trumbull, its drafter.[9] This rule of interpretation, however, applies only if resort to extrinsic evidence fails to clarify the ambiguity. **Roth v. City of Glendale**, 2000 WI 100, ¶51, 237 Wis. 2d 173, 614 N.W.2d 467; *see also* **Ash Park, LLC v. Alexander & Bishop, Ltd.**, 2015 WI 65, ¶36, 363 Wis. 2d 699, 866 N.W.2d 679. In this regard, we are cognizant that the stipulation itself, though relating to an insurance coverage matter, is not itself an insurance contract, to which certain other rules of construction may apply in the face of ambiguity. *See*

---

[9] During the motion hearing, Trumbull admitted that it had drafted the stipulation, but with "input and additional provisions requested by plaintiff's counsel." The Meisners' counsel represented that his only suggestion related to the provision stating that Trumbull would be deemed to have joined in any objections made by State Farm during the trial. On remand, to the extent the circuit court determines the stipulation must be construed against its drafter, the court may resolve any factual disputes on this topic as necessary.

*generally, e.g.*, **Folkman v. Quamme**, 2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857 (discussing general principles of insurance policy interpretation and contextual ambiguity). Accordingly, a full examination of the circumstances surrounding the transaction is necessary before applying the default rule that a contract must be construed against the party that drafted it. Any determination in this regard would therefore be premature.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).