WISCONSIN END-USER GAS ASSOCIATION and American National Can Company, Petitioners-Respondents,

v.

PUBLIC SERVICE COMMISSION OF WISCONSIN, Respondent-Appellant.†

Court of Appeals

*No. 97–1465. Submitted on briefs March 3, 1998.—Decided April 8, 1998.*

(Also reported in 581 N.W.2d 556.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the brief of *Robert J. Mussallem*, Chief Counsel, Natural Gas Division, and *Steven Levine*, Legal Counsel, Public Service Commission of Wisconsin.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Niles Berman* and *Janet L. Kelly* of *Wheeler, Van Sickle & Anderson, S.C.* of Madison.

SNYDER, P.J.    The Public Service Commission of Wisconsin (PSC) appeals from a circuit court order finding that a penalty tariff imposed for the unauthorized use of gas during a period of interruption was ambiguous on its face and that the PSC's subsequent interpretation was erroneous. The PSC now asserts that: (1) we should give "great deference" to its reasonable interpretation of Wisconsin Electric Power Company—Gas Operations' (WEP-GO) assessed penalty tariff; (2) it has the authority to interpret tariffs "in the public interest"; (3) its order was lawful and fully in accord with applicable statutory and administrative code directives; and (4) its order fully comports with its other decisions imposing penalty tariffs for the unauthorized use of gas.

As an initial matter, we conclude that the appropriate standard of review in this instance is de novo. Although we owe the PSC great deference in matters of statutory interpretation and rate setting, the question presented is whether a contract is ambiguous. We have

as much expertise as the PSC in matters of contract interpretation, and we will apply a de novo standard of review to this issue. The PSC concedes that the contract language is ambiguous. We conclude that the ambiguity must be construed in favor of the parties against whom the penalty was assessed, Wisconsin End User Gas Association and American National Can Company (collectively, WEUGA). We therefore hold that the PSC's determination "erroneously interpreted" the contract language, *see* § 227.57(5), STATS., and we affirm the circuit court's decision.

WEUGA is an association of sixty enterprises which use natural gas in their operations. American National Can is a member of WEUGA and is a customer of WEP-GO. WEP-GO is a local gas distribution company. Large natural gas customers, such as those which make up WEUGA, have the option of electing a lower priority of local delivery service, termed "interruptible" service. A customer which elects interruptible service agrees to cease using gas on what are termed "constraint days" so the needs of higher priority customers may be met. However, an interruptible service customer retains the ability to use unauthorized gas on such days, subject to a penalty tariff.

In January and February 1996, WEP-GO issued constraint day restrictions during a period of extremely cold weather. Certain WEUGA members, including American National Can, used unauthorized gas. As a result, WEP-GO assessed penalty tariffs. The tariffs were assessed based on the following language in the contract between the parties:

Penalty Clause
    The customer will be required to pay a penalty of two dollars ($2.00) per therm, or 2 times the pipe-

line penalty, whichever is greater, for all unauthorized use of gas during a period of interruption or curtailment of service ordered by the company.

WEP-GO interpreted this language to mean that it was required to charge twice the available pipeline penalty tariff if it exceeded $2.00 per therm, even though in this instance it was not actually charged any penalty by its pipeline suppliers. The penalty WEP-GO imposed averaged $17.58 per therm. WEUGA members which were assessed this penalty seek to have it reduced to the $2.00 per therm penalty included in the penalty clause of the contract. The members construe the language to mean that the $2.00 per therm tariff is applicable unless WEP-GO *actually incurred* a higher penalty from its suppliers.

WEUGA petitioned the PSC for this adjustment, but the PSC denied that request. However, on review the circuit court reversed the PSC and ordered it to require WEP-GO to refund to its customers any tariff amounts collected in excess of the $2.00 per therm penalty outlined above. The PSC was also ordered to redraft its tariff to clearly state that unauthorized use penalties at pipeline penalty rates will be imposed irrespective of whether the utility itself incurs pipeline penalties. The PSC now appeals.

## Standard of Review

An initial question raised by the parties concerns the appropriate standard of review. The PSC argues that its interpretation of the contract language should be afforded "great deference" because the imposition of penalties for the unauthorized use of natural gas implicates "significant policy values." WEUGA claims that this issue is primarily a question of law and thus

should be reviewed de novo. Because the scope of our review underpins our analysis of the penalty imposed, and our ultimate decision is largely driven by the degree of deference owed, *see Barron Electric Cooperative v. Public Service Commission*, 212 Wis. 2d 752, 756, 569 N.W.2d 726, 729 (Ct. App. 1997), we begin with consideration of the appropriate standard of review.

■

The interpretation of a contract is a question of law which is subject to de novo review. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). However, when agency review is undertaken there are three levels of deference afforded conclusions of law and statutory interpretation. *See Sauk County v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991). "Great weight" is the first and highest amount of deference given to agency interpretations. *See id.* This standard is the one generally applied in the review of agency determinations and has been described as follows:

> "[I]f the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation . . . the agency's conclusions are entitled to deference by the court. Where a legal question is intertwined with factual determinations or with value or policy determinations or where the agency's interpretation and application of the law is of long standing, a court should defer to the agency which has primary responsibility for determination of fact and policy."

*Id.* (quoted source omitted). This is the standard which the PSC argues is appropriate because it claims that its determination of the appropriate penalty assessment

is "intertwined . . . with value or policy determinations." *See id.*

A second level of review is a midlevel standard, the "due weight" or "great bearing" standard. *See id.* This is used if the agency's decision is "very nearly" one of first impression. *See id.* at 413–14, 477 N.W.2d at 270. Finally, for questions that are "clearly one of first impression" in which the agency has "no special expertise or experience" the least deferential standard, de novo review, is applied. *See id.* at 414, 477 N.W.2d at 270–71.

The assessment of a penalty tariff in this case is not an issue of statutory interpretation; rather, it is an issue of contract interpretation. Ordinarily reviewing courts do not defer to the decisions of administrative agencies when considering pure questions of law. *See Wisconsin Dep't of Transp. v. Office of the Comm'r of Transp.*, 135 Wis. 2d 195, 198, 400 N.W.2d 15, 16 (Ct. App. 1986). Matters of contract interpretation come before this court with frequency, and it is an area of law in which we have a great deal of experience and expertise. Furthermore, the construction of contract terms is circumscribed by specific rules of law. On these bases, we conclude that an agency's construction of a contract is subject to de novo review by this court.

The PSC nonetheless argues for a deferential standard, claiming that in this instance its decision is "so intertwined with value and policy determinations that [it is] entitled to deference by the courts."[1] *Id.* at 199,

---

[1] The PSC claims that the issue before us is one of "the interpretation of public utility tariffs." We disagree. At issue is the construction of ambiguous language in a contract between a

400 N.W.2d at 16. However, a basic tenet applied by a reviewing court when construing a contract is " 'not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use.' " *Miller v. Miller*, 67 Wis. 2d 435, 442, 227 N.W.2d 626, 629 (1975) (quoted source omitted). In this area this court has as much expertise as the PSC, if not more.

### *Construction of the Contract*

We turn then to the language of the contract which set the rate for the penalty tariff to be imposed in the case of the unauthorized use of natural gas. That agreement provided:

> The customer will be required to pay a penalty of two dollars ($2.00) per therm, or 2 times the pipeline penalty, whichever is greater, for all unauthorized use of gas during a period of interruption or curtailment of service ordered by the company.

The PSC concedes that the above language is ambiguous. It is not clear on its face whether the phrase "2 times the pipeline penalty" means "2 times the *applicable* pipeline penalty" or "2 times the *assessed* pipeline penalty." Ambiguity exists if a contract provision is reasonably susceptible to more than one interpretation. *See Kohler Co. v. Wixen*, 204 Wis. 2d 327, 335, 555 N.W.2d 640, 644 (Ct. App. 1996). The ambiguity outlined above underscores the arguments of both sides.

utility company and some of its customers. The construction of a contract is a question of law in which we are well versed.

The PSC interprets the tariff as not requiring the local distribution company to actually experience inadequate supplies and incur a penalty itself in order to charge double the pipeline penalty. WEUGA argues that unless the utility is penalized by its pipeline suppliers, a higher penalty than $2.00 per therm cannot be imposed.

It is a well-settled rule of contract construction that ambiguous terms in contracts are to be construed against the maker or drafter of the contract. *See Dairyland Equip. Leasing, Inc. v. Bohen*, 94 Wis. 2d 600, 609, 288 N.W.2d 852, 856 (1980). A utility can only assess charges which are set forth in a properly filed tariff. The language of the tariff itself governs the relations between the utility and its customers. *See Prentice v. Title Ins. Co.*, 176 Wis. 2d 714, 721, 500 N.W.2d 658, 660 (1993). Section 196.22, STATS., provides:

> No public utility may charge, demand, collect or receive more or less compensation for any service performed by it within the state, or for any service in connection therewith, than is *specified* in the schedules for the service . . . . [Emphasis added.]

This section is a statutory expression of the filed rate doctrine. *See GTE North, Inc. v. Public Serv. Comm'n*, 176 Wis. 2d 559, 569, 500 N.W.2d 284, 288 (1993). This doctrine forbids a regulated utility from receiving compensation for its services unless those rates have been properly filed with the appropriate regulatory authority. *See id.* The key word in the above statute is "specified." *See* § 196.22. The PSC concedes that its contract with WEUGA which purports to specify the applicable penalty tariff is ambiguous.

567

Words or phrases in a contract are ambiguous when they are reasonably susceptible of more than one meaning. *See Patti v. Western Mach. Co.*, 72 Wis. 2d 348, 351–52, 241 N.W.2d 158, 160 (1976). In the contract at issue, the pipeline penalty of "two dollars ($2.00) per therm, or 2 times the pipeline penalty, whichever is greater," is ambiguous. If the phrase is construed to mean that the customer's penalty tariff will depend upon the amount actually assessed and collected by a pipeline supplier, then in this instance the pipeline penalty was zero, and the utility would be required to assess the $2.00 per therm as a penalty.

It has been recognized in other jurisdictions that

> [t]ariffs are written by the carriers. It is presumed that they have used all the words necessary to protect their own interests. Therefore, it is the rule, followed by the courts and the Commission, in doubtful cases, to adopt that interpretation of the tariff which is most favorable to the shipper.

*Indiana Harbor Belt R. Co. v. Jacob Stern & Sons*, 37 F. Supp. 690, 691 (N.D. Ill. 1941); *see also United States v. Gulf Ref. Co.*, 268 U.S. 542, 546 (1925). We agree and hereby apply this rule of construction in this case.

Neither side disputes WEP-GO's assessment of some penalty tariff; at issue is the amount of tariff that can be imposed pursuant to the penalty clause. We conclude that based on the ambiguity in the drafting of the penalty provision, WEP-GO is only authorized in this instance to collect the $2.00 per therm penalty which is plainly specified in the contract. This comports with the rule of *Indiana Harbor*, as well as with the rule of law that when a penalty tariff is assessed,

any question of a customer's rights or obligations "must be determined under the tariffs as they existed at the time." *See GTE North, Inc. v. Public Serv. Comm'n,* 169 Wis. 2d 649, 670, 486 N.W.2d 554, 562 (Ct. App. 1992), *rev'd on other grounds,* 176 Wis. 2d 559, 500 N.W.2d 284 (1993). Recognizing that we are required to determine " 'not necessarily what [the parties to a contract] intended to agree to, but what, in a legal sense, they did agree to . . . .,' " *see Miller,* 67 Wis. 2d at 442, 227 N.W.2d at 629 (quoted source omitted), and coupling that with WEP-GO's failure to specify when the tariff doubling the pipeline penalty rate would be imposed, *see* § 196.22, STATS., leads us to conclude that in this instance WEP-GO was permitted recovery of only the $2.00 per therm penalty.

As outlined at the beginning of this opinion, the PSC claims that its penalty assessment is lawful and that it has the authority "to interpret tariffs in the public interest." It argues that it is given the authority to interpret tariffs "under the doctrine of primary jurisdiction." Primary jurisdiction is a doctrine of comity; the decision for a court in a case involving a question of primary jurisdiction is not whether the court has jurisdiction but whether it should exercise its discretion to retain jurisdiction. *See City of Brookfield v. Milwaukee Metro. Sewerage Dist.,* 171 Wis. 2d 400, 420, 491 N.W.2d 484, 491 (1992). In this case, the PSC has already had an opportunity to construe WEP-GO's contract with WEUGA and the doctrine of primary jurisdiction is not implicated.[2] The issue before us is

---

[2] The PSC notes that the primary jurisdiction doctrine is based "on a judicial refusal to interpret questions of the meaning of agency rules and tariffs until they have been construed by the supervising agency." It then analogizes this case as falling within that doctrine. However, the PSC has had an opportunity

the construction of a contract, written by the utility, which purports to outline the applicable penalties which the utility must assess. *See supra* note 1.

Finally, the PSC argues that its "interpretation of the unauthorized use penalty provision is consistent with [its] underlying orders which gave rise to this tariff provision . . . ." However, the evidence contained in the PSC's docket will not be considered because it is parol evidence. " 'When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written . . . agreement . . . .' " *Dairyland Equip. Leasing*, 94 Wis. 2d at 607, 288 N.W.2d at 855 (quoted source omitted). Even if parol evidence becomes part of the record, the court must disregard it. *See id.* In this case, the PSC docket information was never part of an agreement with any of its customers and it will not be considered as evidence of what the PSC intended to embody in its written contract.

Based on our de novo review, we conclude that the PSC's interpretation of its contract assessing the penalty tariff did not comport with established rules of contract construction. Because the PSC has "erroneously interpreted a provision of law," *see* § 227.57(5), STATS., we affirm the circuit court's decision. We hold that the contract was ambiguous as to which penalty tariff would be applied in this instance, and therefore the penalty which is clearly specified, $2.00 per therm, must be assessed.

---

to construe the contract provisions and we have subsequently determined that the PSC's construction is subject to de novo review. We do not need to consider the question of primary jurisdiction.

*By the Court.*—Order affirmed.