725 N.W.2d 304 (2006)
2006 WI App 241
WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT, Plaintiff-Respondent,
v.
LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Appellant,
Mary A. Robinson, Joe N. Hartlich, Kathleen A. Siebold, Beatrice A. Jaeger, Richard H. Todl, Sherry J. Wilson, Brian M. Dean, Christine L. Tracy, Elizabeth J. Hurst, Michael J. Jersey, Dale J. Husnik, Mary E. McCormick, Carmella R. Suttle, Maria G. Espadas, Lisa W. Yuen, Bong S. Smith, Ofelia Garcia, Maria L. Trevino, Patricia A. Chapple and Bruce W. Court, Defendants.
No. 2006AP395.
Court of Appeals of Wisconsin.
Submitted on Briefs August 8, 2006.
Opinion Filed October 26, 2006.
*306 On behalf of the defendant-appellant, the cause was submitted on the briefs of David B. Nance, Labor and Industry Review Commission, Madison.
On behalf of the plaintiff-respondent, the cause was submitted on the brief of Daniel J. LaRocque and Jessica A. Nelson, Wisconsin Department of Workforce Development, Madison.
Before LUNDSTEN, P.J., and DYKMAN and VERGERONT, JJ.
¶ 1 VERGERONT, J.
This appeal concerns the eligibility of laid-off workers for trade readjustment allowances under the Trade Adjustment Act of 1974, as amended, 19 U.S.C. §§ 2271-2322 (2000 & Supp.2004) (the Act).[1] The Department of Workforce Development (DWD) determined that certain workers seeking these allowances were ineligible because they had not enrolled in an approved training program or received a training waiver within the time period specified in the Act. In arriving at these decisions, DWD followed a guidance letter issued by the United States Department of Labor (DOL). The Wisconsin Labor and Industry Review Commission (LIRC) determined that it was not obligated to follow the DOL guidance letter and employed a different construction of the Act under which there was no deadline for receiving a waiver. As a result, LIRC set aside DWD's decisions and remanded to DWD for further determinations regarding waivers. On DWD's appeal to the circuit court, the court concluded that LIRC erred in disregarding the DOL guidance letter, and LIRC appeals.
¶ 2 We conclude that the statutory language at issue is ambiguous because both LIRC's construction of the Act and DOL's construction as expressed in the guidance letter are reasonable. We do not, however, resolve that ambiguity because we conclude that LIRC, like DWD, is obligated by the terms of the agreement between the State of Wisconsin and DOL to apply DOL's reasonable construction of the Act as expressed in the guidance letter. We therefore affirm.

BACKGROUND
¶ 3 The Act provides benefits to eligible workers who have lost their jobs because of competition from foreign companies. 19 U.S.C. § 2271 et seq. Benefits include trade readjustment allowances, costs of approved training, counseling and placement services, and job search and relocation allowances. 19 U.S.C. §§ 2291-98. These benefits are sometimes referred to as the "trade adjustment assistance program." A group of workers becomes eligible to apply for these benefits upon certification by the Secretary of DOL that they or their employment has been adversely affected by foreign trade competition as defined by the Act. 19 U.S.C. §§ 2271-3, 2319(1) and (2).
*307 ¶ 4 Under the Act, the Secretary of DOL is authorized to enter into agreements with any state or state agency under which "the cooperating State agency . . . as agent of the United States, will receive applications for, and will provide, payments on the basis provided in this chapter," make available certain services, and perform certain other responsibilities under the Act. 19 U.S.C. § 2311(a). The cooperating states receive the necessary funds from the Secretary of DOL. 19 U.S.C. § 2313.
¶ 5 Pursuant to an agreement titled "Agreement between the State of Wisconsin and the Secretary of Labor . . .," DWD is identified as the state agency to "act as the agent of the United States" in carrying out the specified responsibilities under the Act. This agreement provides that "[t]he functions and duties undertaken under this Agreement will be performed in accordance with the Act and the regulations and operating instructions issued thereunder by the [DOL]." The agreement also states that "the State agrees to follow the eligibility criteria and procedures for the [trade adjustment assistance] program under [the Act]" and "operating instructions" for implementing the Act contained in specified "Training and Employment Guidance Letters."
¶ 6 With respect to eligibility for the trade readjustment allowance, workers must meet certain conditions for eligibility. 19 U.S.C. § 2291(a). The condition relevant to this appeal relates to training programs and requires that the worker:
(A)(i) is enrolled in a training program approved by the Secretary under section 236(a) [19 U.S.C. § 2296(a)], and
(ii) the enrollment required under clause (i) occurs no later than the latest of
(I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment which meets the requirements of paragraphs (1) and (2),
(II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker,
(III) 45 days after the later of the dates specified in subclause (I) or (II), if the Secretary determines there are extenuating circumstances that justify an extension in the enrollment period, or
(IV) the last day of a period determined by the Secretary to be approved for enrollment after the termination of a waiver issued pursuant to subsection (c).
(B) has, after the date on which the worker became totally separated, or partially separated, from the adversely affected employment, completed a training program approved by the Secretary . . ., or
(C) has received a written statement under subsection (c)(1) after the date described in subparagraph (B).
Section 2291(a)(5).
¶ 7 19 U.S.C. § 2291(c)(1) authorizes the Secretary to waive the requirement of enrolling in a training program described in § 2291(a)(5)A "if the Secretary determines that it is not feasible or appropriate for the worker, because of 1 or more" of the listed reasons.[2] The Secretary may authorize a *308 cooperating state, in the agreements under 19 U.S.C. § 2311, to issue these waivers. Section 2291(c)(3)A. In Wisconsin, the agreement with DOL authorizes "the State" to issue waivers under subsec. (c).
¶ 8 The time limits in 19 U.S.C. § 2291(a)(5)A(I)-(IV) were added by amendment in 2002. See Act of Aug. 6, 2002, Pub.L. No. 107-210, § 114, Stat. 939. In this opinion, we will call the time limits in I and II of § 2291(a)(5)A the "16/8-week deadline." One of the guidance letters specified in the agreement with DOL refers to the 16/8-week deadline. (It is identified as the "Training and Employees Guidance Letter 11-02 Change 1"; we will call it "the 11-02 guidance letter.") This guidance letter states that the 2002 amendment "imposed a deadline by which a worker must be enrolled in approved training, or have a waiver of this requirement in order to be eligible for [the trade readjustment allowance]" and that "[state agencies] must . . . assist . . . workers in enrolling in an approved training program prior to the [16/8-week] deadline, or issue the workers waivers prior to the [16/8-week] deadline, if appropriate."
¶ 9 The twenty claimants involved in this case were laid off because of lack of work by employers whom the Secretary certified as adversely affected by foreign trade. The claimants contacted DWD seeking benefits under the Act, but they all did so after the 16/8-week deadline. DWD issued initial determinations concluding that the claimants were ineligible for the trade readjustment allowance because they had neither enrolled in a training program nor obtained a waiver of the training requirement within the 16/8-week deadline.
¶ 10 The claimants appealed the initial determinations and a hearing was held before an administrative law judge (ALJ). The ALJ upheld DWD's initial determinations in all cases but one; as to Christine Tracy, the ALJ determined that DWD was estopped from enforcing the 16/8-week deadline because it had failed to inform Tracy about it.
¶ 11 All twenty claimants appealed DWD's decisions to LIRC. LIRC concluded *309 that DWD had erroneously interpreted 19 U.S.C. § 2291(a)(5) and that the 16/8-week deadline did not apply to waivers under subsec. (c). In reaching this conclusion, LIRC considered the 11-02 guidance letter but decided not to give it any weight because it was not the result of formal rulemaking and did not explain how DOL arrived at this interpretation of the Act.
¶ 12 Based on its interpretation of 19 U.S.C. § 2291(a)(5) and (c), LIRC reversed and remanded with directions for DWD to determine whether training waivers were appropriate under the criteria in § 2291(c)(1).[3] In Tracy's case, LIRC addressed the issue whether equitable estoppel applied. LIRC concluded that, even though DWD had not complied with its obligations to provide information under the Act with respect to Tracy,[4] a federal regulation and other considerations precluded the application of equitable estoppel.
¶ 13 In each case, DWD moved for reconsideration arguing that, because of the agreement with DOL, the State of Wisconsin, including LIRC, was obligated to comply with the 11-02 guidance letter. If the State did not do so, DWD asserted, DOL was authorized to reduce the federal unemployment tax credit granted to employers and the State might be required to repay to the federal government sums that DOL determined were improperly paid to claimants. Attached to DWD's motion was a letter from a DOL regional administrator to the secretary of DWD stating that LIRC's construction of the Act was inconsistent with the 11-02 guidance letter and advising DWD to take all reasonable steps to obtain a reconsideration or appeal of LIRC's decision. The letter warned that failure to take these actions would result in a formal notice being served under 20 C.F.R. § 617.52(c), which could lead to a determination under 20 C.F.R. § 617.59(f) that the agreement had been breached and the State would have to return to the federal government the funds improperly paid.[5]
¶ 14 LIRC denied the request for reconsideration. It expressed doubts that it was bound by the agreement with DOL and reaffirmed its view that its construction of the Act was the correct one.
¶ 15 DWD sought judicial review in each case, and the cases were consolidated in Dane County Circuit Court. The circuit court agreed with DWD that the agreement with DOL bound both DWD and LIRC to comply with the 11-02 guidance letter. In reaching this conclusion, the court stated that DOL's interpretation of the Act contained in this guidance letter is not unreasonable and is not inconsistent *310 with the language of the Act, and LIRC is not free to ignore DOL's interpretation and substitute its own. The circuit court therefore reversed LIRC's decision in each of the twenty cases, reinstating the ALJ's decisions in the nineteen cases that affirmed DWD and reinstating DWD's decision in Tracy's case.

DISCUSSION
¶ 16 On appeal, LIRC argues that its construction of the Act to permit the granting of waivers after the 16/8-week deadline is correct and the agreement with DOL does not require that we set aside LIRC's decision. In resolving this appeal, we first address our standard of review, then the statutory language at issue, and then the construction and effect of the agreement with DOL.
I. Standard of Review
¶ 17 On this appeal, we review of the decision of LIRC, not that of the circuit court. Stafford Trucking, Inc. v. ILHR Dep't, 102 Wis.2d 256, 260, 306 N.W.2d 79 (Ct.App.1981). The dispute in this case involves the proper construction of the Act and also involves the proper construction and effect of the agreement with DOL. The construction of a statute when the relevant facts are undisputed presents a question of law, which we review de novo. Coutts v. Wisconsin Ret. Bd., 209 Wis.2d 655, 663, 562 N.W.2d 917 (1997). Similarly, the proper construction of a contract generally presents a question of law, which we review de novo. Wisconsin End-User Gas Ass'n v. PSC, 218 Wis.2d 558, 564, 581 N.W.2d 556 (Ct.App. 1998).
¶ 18 Although courts are not bound by an administrative agency's conclusion on a question of law, we may defer to them in certain situations. UFE Inc. v. LIRC, 201 Wis.2d 274, 284, 548 N.W.2d 57 (1996). Whether we do defer, and, if so, whether we give due weigh or great weight, "`depends on the comparative institutional capabilities and qualifications of the court and the administrative agency.'" Id. (citation omitted). When the question of law concerns the interpretation of a statute that the agency is charged with administering, we generally give either due weight or great weight deference to the agency's interpretation because the agency has some degree of experience or expertise.[6]See id. at 286-87, 548 N.W.2d 57.
¶ 19 LIRC argues that its construction of the Act is entitled to due weight because it has significant experience in interpreting and applying provisions of the Act. DWD responds that we should give LIRC's construction no deference because LIRC has not, before this case, been called upon to interpret the particular statutory provisions at issue, LIRC has cited no authority for its interpretation, and its interpretation is inconsistent with the interpretation of the federal agency responsible for the program under the federal statute. DWD also contends that LIRC is entitled to no deference on the issue of the construction and effect of the agreement with DOL. LIRC does not reply to this latter argument and does not separately address our *311 standard of review with respect to the construction and effect of the contract.
¶ 20 We conclude that de novo review is appropriate in this case. The issue of the proper interpretation of the Act is bound up with the construction and effect of the agreement with DOL. LIRC makes no argument that we should defer to its legal conclusions regarding the contract, and we discern no basis for doing so. LIRC is in no better position than this court to decide which entities are bound by this agreement and how, if at all, the agreement affects LIRC's authority to interpret the Act in a manner inconsistent with the 11-02 guidance letter. See Wisconsin End-User Gas, 218 Wis.2d at 565, 581 N.W.2d 556 (agency's construction of a contract is subject to de novo review because courts frequently interpret contracts). Moreover, courts do not defer to an agency's determination concerning its own authority. See Schenkoski v. LIRC, 203 Wis.2d 109, 113, 552 N.W.2d 120 (Ct. App.1996).
II. 19 U.S.C. § 2291(a) and (c)
¶ 21 When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. Id., ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. Id., ¶ 48. Statutory language is ambiguous if, employing these principles, it is capable of being understood by reasonably well-informed persons in two or more senses. Id., ¶ 47.
¶ 22 Beginning with the statutory language here, we see that 19 U.S.C. § 2291(a)(5) contains three alternative conditions for receiving the trade readjustment allowance: enrollment in an approved training program, completion of an approved training program, or a waiver of the enrollment requirement. Section 2291(a)(5). The condition of enrollment in a training program is satisfied only if enrollment takes place within specified time periods: the 16/8-week deadline, a forty-five-day extension because of extenuating circumstances, or the date the Secretary determines after a waiver terminates. Section 2291(a)(5)A(I-IV). The provision governing waivers of the enrollment requirement, subsec. (c), does not specify a time period within which waivers must be granted. However, as LIRC points out, the date after which waivers may be granted is specified: the date on which the worker became totally or partially separated. See § 2291(a)(5)C.
¶ 23 We agree with LIRC that, because there is no express language that requires a waiver to be granted within the 16/8-week deadline, it is reasonable to construe the language as not imposing this deadline on waivers. Such a construction, as LIRC points out, ensures that workers who meet the grounds for waiver of training obtain the allowance. In addition, we observe that certain grounds for waiver, such as retirement, 19 U.S.C. § 2291(c)(1)C, would appear to be permanent, and, thus, a time period for granting a waiver from training on such a ground would not appear to have a function.
¶ 24 We also conclude that it is reasonable to construe the language as imposing the 16/8-week deadline thereof on the granting of waivers, as DOL has done in *312 the 11-02 guidance letter. Proper construction of a statute involves reading closely related statutes together, Kalal, 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110; and 19 U.S.C. § 2291(a)(5) and (c) are closely related. The evident purpose of the deadlines in § 2291(a)(5)A is to encourage workers to promptly enroll in training that is available and feasible. The six-month limitation on the length of waivers unless the Secretary determines otherwise, see § 2291(c)(2),[7] and the provision for the Secretary to establish a time period for enrollment when a waiver terminates, see § 2291(a)(5)A(ii)(IV), express the purpose that, even when waivers are granted, prompt enrollment in appropriate training remains a goal. An indefinite time period within which to grant waivers undermines these other time limitations, at least in certain situations.
¶ 25 Because there are two reasonable constructions of the statutory language at issue, we conclude it is ambiguous. We do not resolve this ambiguity, however, because, as we explain in the next section, LIRC is obligated to follow DOL's reasonable construction in the 11-02 guidance letter.
III. The Agreement with DOL
¶ 26 As already noted, the agreement with DOL expressly requires compliance with the 11-02 guidance letter. LIRC does not argue that the agreement does not plainly state this, nor does it argue that the guidance letter does not plainly require that the waiver be granted within the 16/8-week deadline. LIRC's position is that it is not obligated to follow the guidance letter for these reasons: (1) the agreement does not bind LIRC because only DWD, not LIRC, is designated as the agency in the agreement and the person signing the agreement was not authorized by the governor to sign on behalf of the State of Wisconsin; (2) LIRC is authorized to decide this case by 19 U.S.C. § 2311(d), not by the agreement; (3) under the agreement, the obligation to comply with the Act takes precedence over the obligation to comply with the guidance letter, and LIRC's decision is a correct construction of the Act. We discuss each of these arguments in turn.
¶ 27 The agreement states that it is between the Secretary of DOL and "the State of Wisconsin, hereinafter referred to as the State." DWD is identified in the agreement as the "State Agency Designated by Governor" to receive the applications, provide services, and make payments under the Act. However, the agreement consistently refers to "the State" throughout, not to DWD, in setting forth the obligations under the agreement. Thus, "the State agrees to follow the eligibility criteria and procedures for the [trade adjustment] program under [the Act], [and] . . . Operating Instructions for Implementing the [2002] Amendments to the [Act] [in the 11-02 guidance letter]." LIRC is part of the executive branch of the government of the State of Wisconsin. See WIS. STAT. §§ 15.001(2), 15.01(2), 15.06, and 15.225(1).[8] LIRC is *313 plainly included in the term "the State of Wisconsin" as used in the agreement.
¶ 28 The signature page of the agreement reads as follows.
 STATE OF WISCONSIN U.S. DEPARTMENT OF LABOR
 By: /s/Larry Studesville By: /s/Elaine L. Chao
 Governor (or duly authorized Secretary of Labor
 representative)
 DATED: August 18, 2004 DATED: JAN 26, 2005
--------------------------------------------------------------------------------
 CERTIFICATION
 (If signed by other than Governor)
 Larry Studesville, Administrator, ASD , has the
 (Name and Title)
 authority under the Constitution and laws of this State to sign
 this foregoing Agreement on behalf of the State of Wisconsin.
 Signature: /s/Howard Bernstein
 Title: DWD Legal Counsel
 Date: August 18, 2004
¶ 29 LIRC argues that the signature page does not contain a certification that Larry Studesville is a duly authorized representative of the governor because the certification is not signed by a representative of the governor's office but by DWD's counsel. LIRC points out that by statute it is the governor who has the authority to enter into agreements to accept federal funds. See WIS. STAT. § 16.54(6). Thus, LIRC argues, the agreement is not made on behalf of the State but only on behalf of one departmentDWDand LIRC is not a division of DWD but is an independent commission.
¶ 30 This argument is not persuasive. There is nothing in the record to indicate that Larry Studesville was not authorized by the governor to sign the agreement on behalf of the State of Wisconsin; nor has LIRC provided any legal authority or factual basis for the premise that DWD legal counsel was not authorized to sign the certification.
¶ 31 In addition, if, as LIRC contends, only the governor or a representative of the governor's office has the authority to enter into agreements such as this, then DWD does not have the authority to bind even itself. If this agreement is not properly authorized by the governor, as LIRC contends, the result would appear to be that the State of Wisconsin is not entitled to the federal funds. The result cannot, logically, be that the State of Wisconsin is entitled to receive and utilize the funds but need not comply with the obligations in the agreement that are a condition of receiving the funds.
¶ 32 We also do not agree with LIRC that it is not bound by the agreement because of 19 U.S.C. § 2311(d). This section provides:
(d) Review. A determination by a cooperating State agency with respect to entitlement to program benefits under an agreement is subject to review in the same manner and to the same extent as determinations under the applicable State law and only in that manner and to that extent.
"State law" means "the unemployment insurance law of the State . . ." 19 U.S.C. *314 § 2319(10). The agreement with DOL contains language identical to § 2311(d) with the added specification from § 2319(10) that the applicable State law is unemployment insurance law. Under Wisconsin law, LIRC reviews decisions by DWD regarding unemployment compensation where petitions for review are filed. See WIS. STAT. § 103.04(1) and WIS. STAT. ch. 108. Therefore, LIRC is authorized by § 2311(d) and by the agreement to review DWD's determinations on entitlement to benefits under the Act. However, it is not reasonable to construe § 2311(d) to mean that, while the state agency making entitlement determinations must comply with the agreement regarding the substantive standards for those determinations, the state agency reviewing those determinations need not do so. Section 2311(d) plainly addresses the procedure for review of the entitlement determinations, leaving that up to state law; it does not address the substantive standards.
¶ 33 As for LIRC's argument that it has complied with the agreement because it has correctly interpreted the Act, this argument raises an issue that would need resolution if the 11-02 guidance letter conflicted with the plain language of the Act. In that situation, one could argue that the agreement could not be reasonably construed to mean that a state must follow a guidance letter if that is inconsistent with the plain language of the Act. However, in this case we have already concluded that the statutory language at issue is ambiguous and the 11-02 guidance letter gives it a reasonable meaning. The plain terms of the agreement obligate the State of Wisconsin, which includes LIRC, to comply with the guidance letter; the agreement cannot be reasonably read to allow LIRC to substitute its own judgment for DOL's on how to resolve the ambiguity in the statutory language.
¶ 34 LIRC makes the additional argument that, even if it is bound by the agreement, the reviewing courts are not. Thus, LIRC asserts, we are free to construe the statutory language without regard to the agreement with DOL. We do not understand this argument. DWD is not arguing that the reviewing courts are bound by the agreement; rather, DWD asserts, it is bound and so is LIRC. The role of the reviewing courts is to resolve this issue.

CONCLUSION
¶ 35 LIRC erred in disregarding DOL's 11-02 guidance letter and concluding that waivers could be granted even though the 16/8-week deadline of 19 U.S.C. § 2291(a)(5)A(ii)(I) and (II) had passed. We therefore affirm the circuit court's ruling reinstating the ALJ's determinations in the nineteen cases identified and reinstating DWD's determination in Tracy's case.
Order affirmed.
¶ 36 DYKMAN, J. (dissenting).
The majority is not persuaded by LIRC's argument that the Governor-Secretary agreement between the U.S. Department of Labor and the State of Wisconsin was not signed by the State of Wisconsin. LIRC puts it this way:
While the agreement refers to itself as being made between USDOL and "the State Of Wisconsin" and refers throughout generically to "the State," these references alone cannot be taken to conclusively establish that it was in fact entered into by and with authority of the State of Wisconsin with binding effect on all of the entities of that state. . . .
. . . .
However, the agreement is not signed by the Governor, but by one "Larry Studesville." The agreement also contains *315 no indication that Larry Studesville was a duly authorized representative of the Governor for purposes of signing the agreement on behalf of the State of Wisconsin, in that the "Certification" as to his authority is not itself signed by a representative of the Governor's office, but only by the Legal Counsel for DWD itself.
¶ 37 This squarely raises the issue of whether Larry Studesville, who concededly is the administrator of the Administrative Services Division, has authority to enter into contracts with DOL that bind the State of Wisconsin. The majority recognizes this problem but dismisses it by saying that "[t]here is nothing in the record to indicate that Larry Studesville was not authorized by the governor to sign the agreement on behalf of the State of Wisconsin." Majority, ¶ 30. No one disputes that Elaine Chao, the Secretary of the U.S. Department of Labor, had authority to sign the contract.
¶ 38 I accept the majority's conclusion that a variety of statutes show conclusively that LIRC is part of the executive branch of the State of Wisconsin. I also accept that the agreement with DOL can be signed by a duly authorized representative of the governor. But I agree with LIRC that "nothing in the laws of Wisconsin grants . . . authority to the Administrator of [the Administrative Services Division]" to bind the State of Wisconsin to a contract with the Department of Labor.
¶ 39 Under the majority's theory, the chief assistant to the assistant chief of ASD has authority to bind the State of Wisconsin to a contract if his or her signature is on the contract. Under this theory, no one can challenge as unauthorized whatever that person signs. I think that turns burden of proof upside down and backwards. DWD is the plaintiff in this action. It is relying on a contract that it believes ASD signed with DOL. It must recognize that without this contract, its position is hopeless.
¶ 40 Because DWD is the plaintiff here, it carries the burden of proof. See Ernst v. Greenwald, 35 Wis.2d 763, 773, 151 N.W.2d 706 (1967). "The general rule is that the party seeking judicial process to advance a position carries the burden of proof." Long v. Ardestani, 2001 WI App 46, ¶ 37, 241 Wis.2d 498, 624 N.W.2d 405. The initial issue here is the validity of the contract between the State of Wisconsin and DOL. By its terms, the contract must be signed by the governor or the governor's duly authorized representative. Larry Studesville was not the governor when the contract was signed. Therefore, for the contract to be valid, he must have been a duly authorized representative of the governor. There is no statute providing that the administrator of ASD is a duly authorized representative of the governor and no assertion or evidence that the governor told or wrote Studesville that he was so authorized. ASD's lawyer believes that is the case, but all we know is that this is his opinion. He does not tell us why he believes that the governor authorized Larry Studesville to sign the contract. Neither does the majority. Nor is there anything showing that the governor authorized administrators of ASD to enter into contracts binding the State of Wisconsin. DWD had the burden to show that the governor authorized Larry Studesville to sign the contract with DOL, and it failed to carry this burden. Accordingly, were I writing for the majority, I would reverse.[1] I therefore respectfully dissent.
NOTES
[1] All references to the United States Code are to the 2000 edition and the 2004 supplement, unless otherwise noted.
[2] 19 U.S.C. § 2291(c)(1) provides:

(1) Issuance of waivers. The Secretary may issue a written statement to an adversely affected worker waiving the requirement to be enrolled in training described in subsection (a)(5)(A) of this section if the Secretary determines that it is not feasible or appropriate for the worker, because of 1 or more of the following reasons:
(A) Recall. The worker has been notified that the worker will be recalled by the firm from which the separation occurred.
(B) Marketable skills. The worker possesses marketable skills for suitable employment (as determined pursuant to an assessment of the worker, which may include the profiling system under section 303(j) of the Social Security Act (42 U.S.C. 503(j)), carried out in accordance with guidelines issued by the Secretary) and there is a reasonable expectation of employment at equivalent wages in the foreseeable future.
(C) Retirement. The worker is within 2 years of meeting all requirements for entitlement to either
(i) old-age insurance benefits under title II of the Social Security Act (42 U.S.C. 401 et seq.) (except for application therefor); or
(ii) a private pension sponsored by an employer or labor organization.
(D) Health. The worker is unable to participate in training due to the health of the worker, except that a waiver under this subparagraph shall not be construed to exempt a worker from requirements relating to the availability for work, active search for work, or refusal to accept work under Federal or State unemployment compensation laws.
(E) Enrollment unavailable. The first available enrollment date for the approved training of the worker is within 60 days after the date of the determination made under this paragraph, or, if later, there are extenuating circumstances for the delay in enrollment, as determined pursuant to guidelines issued by the Secretary.
(F) Training not available. Training approved by the Secretary is not reasonably available to the worker from either governmental agencies or private sources (which may include area career and technical education schools, as defined in section 2302 of Title 20, and employers), no training that is suitable for the worker is available at a reasonable cost, or no training funds are available.
[3] As to three claimants, LIRC ordered that DWD grant waivers because, as to those claimants, LIRC concluded, DWD had initially granted a waiver before issuing another determination that a waiver could not be granted because the 16/8-week deadline had not been met.
[4] 19 U.S.C. § 2275(a) requires the Secretary to "provide full information to workers about the benefit allowances, training, and other employment services available under this chapter" in specified times and ways. Under the agreement with DOL, this is the obligation of "the State."
[5] 20 C.F.R. § 617.52 establishes procedures to ensure that states comply with the Act and regulations. 20 C.F.R. § 617.59(f) provides:

(f) Breach. If the Secretary finds that a State or State agency has not fulfilled its commitments under its Agreement under this section, section 3302(c)(3) of the Internal Revenue Code of 1986 shall apply. A State or State agency shall receive reasonable notice and opportunity for hearing before a finding is made under section 3302(c)(3) whether there has been a failure to fulfill the commitments under the Agreement.
[6] Generally, of course, state agencies are charged with administering state statutes, and, thus, generally, we do not defer to a state agency's construction of a federal statute. American Family Mut. Ins. Co. v. D.O.R., 214 Wis.2d 577, 582-83, 571 N.W.2d 710 (Ct.App. 1997). However, we have given a state agency's interpretation of a federal statute due weight when the agency's responsibility under state law involves administering an assistance program governed by the federal statute. See Gould v. DHSS, 216 Wis.2d 356, 372-74, 576 N.W.2d 292 (Ct.App.1998).
[7] 19 U.S.C. § 2291(c)(2) provides:

(2) Duration of waivers. (A) In general. A waiver issued under paragraph (1) shall be effective for not more than 6 months after the date on which the waiver is issued, unless the Secretary determines otherwise.
(B) Revocation. The Secretary shall revoke a waiver issued under paragraph (1) if the Secretary determines that the basis of a waiver is no longer applicable to the worker and shall notify the worker in writing of the revocation.
[8] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[1] This mandate is problematic because LIRC, in its decision setting aside DWD's decisions, necessarily relied on the alleged contract. Without a contract, there would be nothing for it to decide and, presumably, no funds to award to anyone. Still, all that LIRC asks for is a reversal. Were I writing for the majority, that would be our mandate.