PER CURIAM.
¶1 Daryl Smith appeals a judgment of conviction for operating while intoxicated, sixth offense, as a repeater. Smith also appeals the denial of his postconviction motion. Smith argues that he received ineffective assistance of counsel in connection with his plea agreement, and that the circuit court erroneously exercised its discretion when it ordered him to pay restitution. We reject Smith's arguments and affirm.
BACKGROUND
¶2 Following a single-car crash that injured a victim, C.B., Smith was charged with sixth offense operating with a prohibited alcohol concentration, resisting an officer, and two counts of obstructing an officer, all as a repeater. Shortly after filing the criminal complaint against Smith, the prosecutor offered to allow Smith to plead without the "habitual criminal penalty enhancer"[2] if Smith chose to waive the preliminary hearing and not litigate any pretrial motions. Smith waived his preliminary hearing but filed two motions to eliminate or reduce his cash bond. The State subsequently filed an amended information adding charges for operating while intoxicated, sixth offense, and operating with a restricted controlled substance in blood, sixth offense, both as a repeater.
¶3 Several months later, the State offered Smith a plea deal in which Smith would plead guilty or no contest to operating a motor vehicle while under the combined influence of an intoxicant and controlled substances, sixth offense, without the repeater enhancer. The remaining charges would be dismissed but read in at sentencing. As part of this offer, the State would recommend two years of initial confinement and three years of extended supervision.
¶4 As the trial date approached, the State offered Smith an alternative plea deal in which Smith would plead guilty or no contest to sixth offense operating a motor vehicle while under the combined influence of an intoxicant and controlled substances, as a repeater. As part of this offer, the parties would jointly recommend that sentencing be withheld and that Smith be placed on probation. Smith accepted this plea offer.
¶5 At the plea hearing, the circuit court confirmed that Smith understood the effect of pleading as a repeater. Specifically, the court explained that, in the absence of the penalty enhancer, Smith would be facing a total sentence of six years, including three years of initial confinement. However, with the penalty enhancer, Smith was facing a total sentence of ten years, with up to seven years of initial confinement. Smith confirmed that he understood. The court accepted Smith's no-contest plea and, pursuant to the parties' joint recommendation, withheld sentence and imposed five years of probation. At a later hearing on restitution,[3] the court ordered Smith to pay $16,747 to the victim, C.B.
¶6 Smith subsequently filed a motion for postconviction relief alleging that he received ineffective assistance of counsel in connection with his plea and that the circuit court erred in determining the amount of restitution. Regarding the ineffective-assistance-of-counsel claim, Smith argued that his attorney had failed to take steps to enforce the State's agreement to waive the repeater enhancer. The court denied this aspect of Smith's motion after a hearing. Regarding the restitution order, Smith argued that the court did not properly factor in a $50,000 insurance settlement paid to the victim, C.B. After further briefing, the court denied this aspect of Smith's motion by written order. Smith appeals.
DISCUSSION
¶7 Smith makes two arguments on appeal. First, he contends that the State breached its plea agreement, and that he received ineffective assistance of counsel in connection with this breach. Second, he contends that the circuit court erroneously exercised its discretion in setting the amount of restitution. We address each of these arguments below.
Was Smith's Attorney Ineffective With Respect To the Plea Agreement?
¶8 To establish ineffective assistance of counsel, Smith must show that his attorney's performance was deficient and that such performance prejudiced his defense. See Strickland v. Washington , 466 U.S. 668, 687 (1984). In order to establish deficient performance, a defendant must identify counsel's specific acts or omissions that fell "outside the wide range of professionally competent assistance." Id. at 690. In order to establish prejudice, Smith must show that the alleged defect in the attorney's performance "actually had an adverse affect on the defense." Id. at 693. We do not need to address both components of the analysis if a defendant makes an inadequate showing on one. See id. at 697.
¶9 Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. See State v. Alexander , 2015 WI 6, ¶ 15, 360 Wis. 2d 292, 858 N.W.2d 662. We "uphold the circuit court's findings of fact, including the circumstances of the case and the counsel's conduct and strategy, unless they are clearly erroneous." State v. Jenkins , 2014 WI 59, ¶ 38, 355 Wis. 2d 180, 848 N.W.2d 786. "[W]hether counsel's performance was deficient and whether a defendant was prejudiced thereby, present questions of law that we review independently." Alexander , 360 Wis. 2d 292, ¶ 15.
¶10 Smith argues that his attorney provided ineffective assistance of counsel by failing to recognize that the State had breached its agreement, failing to object to the breach, and failing to properly advise Smith regarding the breach. The circuit court rejected this argument on the grounds that the State did not breach any agreement.[4] Specifically, the court found that the State satisfied the terms of its offer when it gave Smith the opportunity to plead without the repeater enhancer, but Smith rejected this offer.
¶11 On appeal, Smith renews his argument that there was a breach. Specifically, before the preliminary hearing, the State made the following offer to Smith:
[I]f he chooses to waive his preliminary hearing and ultimately plead per the State's settlement offer without litigating any pretrial motions, then I would agree that as part of the State's settlement offer that Mr. Smith will be able to plead without being subject to any [repeater] penalty enhancer .
(emphasis in original). Smith argues that he complied with the terms of this offer by waiving his preliminary hearing and not litigating any pretrial motions other than his bail motions, but the State then breached its agreement by making a settlement offer that required him to plead as a repeater. See State v. Williams , 2002 WI 1, ¶ 38, 249 Wis. 2d 492, 637 N.W.2d 733 ("A material and substantial breach is a violation of the terms of the agreement that defeats the benefit for which the accused bargained."). Smith does not seek to withdraw his plea but, instead, argues that the remedy for this breach is to resentence him without the repeater penalty enhancer.
¶12 "The precise terms of a plea agreement between the State and a defendant and the historical facts surrounding the State's alleged breach of that agreement are questions of fact." State v. Naydihor , 2004 WI 43, ¶ 11, 270 Wis. 2d 585, 678 N.W.2d 220. We review such facts "under the clearly erroneous standard." Id . "Whether the State's conduct constitutes a material and substantial breach of the plea agreement is a question of law that this court reviews de novo." Id .
¶13 Smith contends that the circuit court clearly erred in finding that he rejected the State's first offer, because there was no evidence to support the conclusion that Smith had actually turned it down. We disagree. In determining that Smith rejected the offer, the court explained that the offer "was out there [and] he didn't take it." There was ample evidence to support this determination because both the prosecutor and Smith's attorney testified that Smith was offered a choice between the two plea offers. Smith's attorney further testified that he reviewed both offers with Smith. Accordingly, we see no clear error in the court's factual finding that Smith was offered the opportunity to plead without being subject to the repeater penalty enhancer, and that he rejected it when he chose a different plea offer that included the repeater penalty enhancer.
¶14 Smith also argues that the State breached its agreement when it made the second plea offer that exposed him to the repeater penalty enhancer. He contends that the State's initial promise was that the State would waive penalty enhancers as part of any plea agreement . We disagree that this is a fair reading of the terms of the State's proposal. The State's offer was that "Mr. Smith will be able to plead without being subject to any [repeater] penalty enhancer." By giving Smith the choice between two options, including one that allowed Smith to plead without being subject to any repeater penalty enhancers, the State fulfilled the express terms of its promise.
¶15 Smith further contends that the State breached its duties of good faith and fair dealing by making its second offer. See State v. Scott , 230 Wis. 2d 643, 654-55, 602 N.W.2d 296 (Ct. App. 1999) (explaining that plea bargains are subject to contract law principles, including the duty of good faith and fair dealing). Smith argues that the State was not bargaining in good faith when it "withdr[e]w a key provision from an offer that Smith had accepted and for which he had given consideration." However, Smith's argument incorrectly characterizes the State's conduct. Here, the State gave Smith two different plea options, one of which waived the penalty enhancer and the other of which clearly did not waive it. There is no evidence that the State withdrew the option that allowed Smith to plead without being subject to the penalty enhancer. As explained above, the availability of this option fulfilled any obligation the State had to Smith.
¶16 Smith also argues that the State's second offer was misleading because it required Smith to plead as a repeater but did not specifically say that the repeater penalty enhancer would apply. We disagree that there was anything misleading about the State's second offer. The first offer expressly stated that Smith would be pleading without the repeater penalty enhancer, while the second offer expressly stated that Smith would be pleading as a repeater. The fact that Smith would be pleading as a repeater appears in bold, which refutes any suggestion that the prosecutor was trying to conceal its inclusion.
¶17 Moreover, there is ample evidence that Smith was aware of the effect of pleading as a repeater when he entered his plea. Smith's attorney testified that it was his ordinary practice to go through the plea questionnaire with his clients, and he specifically noted on Smith's questionnaire that the penalty enhancer added four years to Smith's potential sentence. In addition, during the plea hearing, the circuit court reviewed the effect of the penalty enhancer on Smith's sentence, and Smith confirmed on the record that he understood that he was facing four additional years of initial confinement because he was pleading as a repeater. In sum, we see no factual support for the argument that the State bargained in bad faith when it offered Smith a second plea option that included the penalty enhancer.
¶18 We therefore conclude that the State did not breach its plea agreement. Because Smith's ineffective-assistance-of-counsel claim is based on the premise that there was a breach, Smith has failed to show that his attorney rendered deficient performance or that he was prejudiced in connection with his plea. Accordingly, Smith is not entitled to postconviction relief on this claim.
Was the Circuit Court's Restitution Order Clearly Erroneous?
¶19 Smith's second argument for appeal relates to the circuit court's order that he pay $16,747 in restitution for C.B.'s lost wages. Smith contends that the restitution calculation was clearly erroneous because C.B. also received a $50,000 insurance settlement that was sufficient to compensate him for all of his lost wages.
¶20 Restitution orders in criminal cases are governed by WIS. STAT. § 973.20(5) (2015-16),[5] which authorizes the sentencing court to order the defendant to
[p]ay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.
WIS. STAT. § 973.20(5)(a). "Any readily ascertainable pecuniary expenditure paid out because of the crime is appropriate as special damages." State v. Holmgren , 229 Wis. 2d 358, 365, 599 N.W.2d 876 (Ct. App. 1999). We "construe the restitution statute broadly and liberally to allow victims to recover their losses resulting from the criminal conduct." State v. Johnson , 2005 WI App 201, ¶ 14, 287 Wis. 2d 381, 704 N.W.2d 625.
¶21 At a restitution hearing, "[t]he defendant may assert any defense that he or she could raise in a civil action for the loss sought to be compensated." WIS. STAT. § 973.20(14)(b). Among other things, a defendant may argue "that any restitution award should be set off with the damages already paid" in a civil action. Olson v. Kaprelian , 202 Wis. 2d 377, 383 n.5, 550 N.W.2d 712 (Ct. App. 1996). The defendant has "the burden of proving facts sufficient to prevail on the defense ... of setoff." State v. Walters , 224 Wis. 2d 897, 907-08, 591 N.W.2d 874 (Ct. App. 1999).
¶22 Here, the circuit court found that the $50,000 settlement was not sufficient to make C.B. whole. Specifically, C.B. presented evidence that he had been unable to work due to injuries arising from the accident. The court determined that C.B. had lost wages totaling $25,500. The court also determined that C.B.'s medical expenses totaled $41,247. Turning to the effect of the $50,000 insurance settlement, the court concluded that the lost wages should be set off by $8,753, which was the amount of the settlement payment that was in excess of C.B.'s medical expenses. Based on this calculation, the court ordered Smith to pay restitution of $16,747.
¶23 On appeal, Smith argues that the circuit court should have calculated C.B.'s medical expenses differently, using the amounts that C.B. actually paid his medical providers from the settlement proceeds. Smith points out that, following negotiations by C.B.'s attorney, the actual amount paid toward C.B.'s medical expenses was approximately $6,600. Smith contends that the $50,000 settlement was therefore sufficient to cover both C.B.'s medical expenses and C.B.'s lost wages, so that the restitution award represents an impermissible double recovery for C.B.
¶24 The central problem for Smith is that he cannot carry his burden of proof on this issue. See Walters , 224 Wis. 2d at 908 (where a victim suffered general and special damages, the defendant has the burden of proving what portion of a civil settlement was paid for special damages). At the restitution hearing, C.B.'s civil attorney testified that C.B. also had claims for future medical expenses, future lost wages, and pain and suffering. In light of these claims, the total value of C.B.'s case was estimated to be between $100,000-150,000, which means that C.B. was not made whole by the $50,000 insurance payment. Moreover, the $50,000 payment was "a universal settlement" of all of C.B.'s damages claims, meaning that there was no itemized listing of the specific categories of damages that C.B. actually recovered through the insurance payment. Without any itemized listing of damages, Smith is unable to satisfy his burden of demonstrating that C.B. had already recovered any portion of the lost wages assessed by the circuit court. We therefore conclude that the court's calculation of restitution was not clearly erroneous.
CONCLUSION
¶25 For the foregoing reasons, we affirm the judgment of conviction and the order denying postconviction relief.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The terms "habitual criminal enhancer" and "repeater enhancer" both refer to "statutory provisions that enhance a convicted criminal defendant's potential exposure to confinement." See State v. Saunders , 2002 WI 107, ¶ 16, 255 Wis. 2d 589, 649 N.W.2d 263. Our supreme court has noted that the terms "habitual criminal" and "repeater" are interchangeable for the purpose of discussing these provisions. Id. (Penalty enhancer provisions "pertain[ ] to persons whom the legislature has dubbed 'habitual criminals' or 'repeaters.' "). We will use the term "repeater" in this opinion for the sake of consistency.

During the initial sentencing hearing, Smith's attorney explained that Smith's insurer was in the process of tendering a $50,000 settlement to C.B. Accordingly, Smith requested that the circuit court leave the issue of restitution open. The court agreed to leave the issue of restitution open for 120 days.

The circuit court also found that Smith violated the terms of the State's offer that allowed him to plead without being subject to the repeater enhancer by litigating pretrial motions regarding his bail. On appeal, Smith argues that these bail motions did not violate the terms of the agreement. Because we can affirm based on the court's conclusion that Smith turned down the offer that allowed him to plead without being subject to the repeater enhancer, we need not address this alternate ground for affirming. See Turner v. Taylor , 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 ("As one sufficient ground for support of the judgment has been declared, there is no need to discuss the others urged.") (quoted source omitted).

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.